269 So.2d 684 (1972)
DADE COUNTY CLASSROOM TEACHERS ASSOCIATION, INC., a Florida Corporation Not for Profit, Petitioner,
v.
The LEGISLATURE of the State of Florida, Respondent.
No. 42323.
Supreme Court of Florida.
November 8, 1972.
Rehearing Denied December 19, 1972.
*685 Tobias Simon, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., and Daniel S. Dearing, Chief Trial Counsel, Tallahassee, for respondent.
Daniel Draper, Jr., of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for Dade County Educational Assn., amicus curiae.
John B. Mattingly, of Mattingly, Kennedy, Fogle & Watts, DeLand, for Florida School Boards Assn., Inc., amicus curiae.
Charles E. Miner, Jr., Tallahassee, for State of Florida Board of Education, amicus curiae.
Ralph A. Marsicano, Tampa, and Burton M. Michaels, Miami, for Florida League of Cities, Inc., amicus curiae.
A.L. Zwerdling, of Zwerdling, Maurer, Diggs & Papp, Detroit, Mich., and Hardee, Hamilton, Douglas & Sierra, Tampa, for American Federation of State, County & Municipal Employees, AFL-CIO, amicus curiae.
ROBERTS, Chief Justice.
This cause is before the Court in original mandamus proceedings filed by the Dade County Classroom Teachers' Association, Inc., in an attempt to compel the Legislature of the State of Florida to enact standards or guidelines regulating the right of collective bargaining by public employees of this state, as guaranteed by Section 6, Article I, 1968 Constitution of Florida, F.S.A. The petition for the constitutional writ was filed as a class action on behalf of the 7,500 classroom teachers employed by the District School Board of Dade County and on behalf of all the public employees of this state  its counties, municipalities, school districts, and all other governmental agencies.
The petition complains of inaction on the part of the Legislature through three legislative sessions following the decision of this Court in Dade County Classroom Teachers' Association v. Ryan, 225 So.2d 903 (Fla. 1969), in which this Court made clear that, except for the right to strike, our State Constitution guarantees to public employees the same rights of collective bargaining as are granted to private employees. We emphasized, however, that appropriate legislation setting out standards and guidelines and otherwise regulating "the sensitive area of labor relations between public employees and public employer" should be adopted by the Legislature. We noted particularly that:
"In the sensitive area of labor relations between public employees and public employer, it is requisite that the Legislature enact appropriate legislation setting out standards and guidelines and otherwise regulate the subject within the limits of said Section 6. A delicate balance must be struck in order that there be no denial of the guaranteed right of public employees to bargain collectively with public employers without, however, in any way trenching upon the prohibition against public employees striking either directly or indirectly or using coercive or intimidating tactics in the collective bargaining process."
As we have previously held in Ryan, supra, with the exception of the right to strike, public employees do have the same right of collective bargaining as are granted private employees by Section 6 of the Declaration of Rights, Florida Constitution, which explicitly provides, as follows:
"The right of persons to work shall not be denied or abridged on account of membership or non-membership in any *686 labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike."
The petition for the writ must, of course, be denied. Florida's Constitution, like those of most other states, divides the state's sovereign powers into three coordinate branches  legislative, executive and judicial  and prohibits a person belonging to one of such branches from exercising any powers "appertaining to either of the other branches unless expressly provided herein." Section 3, Article II, 1968 Constitution. And it is too well settled to need any citation of authority that the judiciary cannot compel the Legislature to exercise a purely legislative prerogative. This Court has been diligent in maintaining and preserving the doctrine of separation of powers mandated by our Constitution. See Pepper v. Pepper, 66 So.2d 280, 284 (Fla. 1953); Brewer v. Gray, 86 So.2d 799, 803 (Fla. 1956). Accord: City of Miami Beach v. Kaiser, 213 So.2d 449, 453 (3 DCA Fla. 1968), in which the Court summarized the separation-of-powers rule as follows:
"The courts have power to invalidate legislative enactments, but with certain exceptions not necessary to enumerate here, may not control or direct legislation, under our doctrine of separation of powers between the executive, legislative and judicial branches of the government. 8 Fla.Jur., Courts § 45; 14 Am.Jur., Courts § 202."
We think it is appropriate to observe here that one of the exceptions to the separation-of-powers doctrine is in the area of constitutionally guaranteed or protected rights. The judiciary is in a lofty sense the guardian of the law of the land and the Constitution is the highest law. A constitution would be a meaningless instrument without some responsible agency of government having authority to enforce it. As Chief Justice Charles Evans Hughes once stated,
"We are under a constitution, but the constitution is what the judges say it is, and the judiciary is the safeguard of our liberty and of our property under the constitution."
When the people have spoken through their organic law concerning their basic rights, it is primarily the duty of the legislative body to provide the ways and means of enforcing such rights; however, in the absence of appropriate legislative action, it is the responsibility of the courts to do so.
Where people in a constitution or charter vote themselves a governmental benefit or privilege, they the people in whom the power of government is finally reposed, have the right to have their constitutional rights enforced. In the very early opinion of McCulloch v. State of Maryland et al., 4 Wheat. (17 U.S.) 316, 4 L.Ed. 579, the great Chief Justice John Marshall profoundly stated:
"The government of the Union, then, ... is, emphatically, and truly, a government of the people. In form and in substance it emanates from them. Its powers are granted by them, and are to be exercised directly on them, and for their benefit ... . supra at 404 and 405.
"But it may with great reason be contended, that a government, entrusted with such ample powers, on the due execution of which the happiness and prosperity of the nation so vitally depends, must also be entrusted with ample means for their execution. The power being given, it is the interest of the nation to facilitate its execution. It can never be their interest, and cannot be presumed to have been their intention, to clog and embarrass its execution by withholding the most appropriate means... . supra at 408.
"It must have been the intention of those who gave these powers, to insure, as far *687 as human prudence could insure, their beneficial execution." supra at 415.
The doctrine of judicial authority and responsibility was early established in the historic case of Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803); and in the many years since then  particularly in the last quarter of a century  the courts have not hesitated to accomplish by judicial fiat what other divisions of government have failed or refused to do in protecting, implementing, or enforcing constitutional rights. The federal constitution first amendment guarantees of freedom of speech, of the press, of assembly, and religion; the fourth amendment guaranty against unreasonable searches and seizures; the fifth amendment right against self-incrimination; the sixth amendment right to counsel  all these constitutional rights have been judicially protected by the courts. See, for example, Chapman v. State of California, 87 S.Ct. 824, 386 U.S. 18, 17 L.Ed.2d 705 (1967), in which the court said that the right of the defendants not to be punished for exercising their fifth and fourteenth amendment right to be silent is a federal right which, in the absence of appropriate congressional action, is the responsibility of the Supreme Court to protect by fashioning the necessary rule. Legislative reapportionment is a constitutional right that has also been coerced by the judiciary in recent years. See Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; cf. In re Advisory Opinion to the Governor, 150 So.2d 721 (Fla. 1963), in which it was noted that, in Sobel v. Adams, 208 F. Supp. 316 (1962), the Federal District Court for the Southern District of Florida had stated that it would "fashion a remedy of reapportionment by judicial decree in such manner as may seem to the Court best adapted to meet the requirements of equal protection" if the Florida Legislature failed to do so. (It might be noted, parenthetically, that the 1968 Florida Constitution now expressly provides for judicial reapportionment by this Court upon failure of the Legislature to adopt a valid reapportionment plan. See Section 16(f), Article III, 1968 Constitution.)
In defense of the Legislature, it might be noted that several attempts were made in 1970 to adopt legislation providing appropriate guidelines for collective bargaining by public employees, all of which proposed legislative acts were vetoed by the then Governor. With commendable interest, the Legislature in its 1972 legislative session took note of this constitutional provision relating to collective bargaining and the decision of this Court in Dade County Classroom Teachers Ass'n Inc. v. Ryan, supra, and it entered upon its legislative labors by adopting standards and guidelines for the collective bargaining of fire fighters, a group of public employees. See Chpt. 72-275, 1972 Laws of Florida.
We take judicial notice that the 1972 Legislature had many problems to deal with and we must assume that the weight of their labors in other matters precluded the establishing of guidelines for public employees other than the fire fighters. And it is fair to assume that many Legislators, like the then Governor, may be opposed to the principle of collective bargaining for public employees and to incorporating this principle into our State constitution, as was the author of this opinion at the time when a member of the Florida Constitutional Revision Commission. But the people of this State have now spoken on this question in adopting Section 6 of Article I, supra. The question of the right of public employees to bargain collectively is no longer open to debate. It is a constitutionally protected right which may be enforced by the courts, if not protected by other agencies of government. It is a right which should be exercised in accordance with appropriate guidelines in order to make sure that there may be no denial of the right and, at the same time, that the prohibition against strikes by public employees will not be violated, either directly or indirectly, and with appropriate penalties for doing so.
*688 The Legislature, having thus entered the field, we have confidence that within a reasonable time it will extend its time and study into this field and, therefore, judicial implementation of the rights in question would be premature at this time. If not, this Court will, in an appropriate case, have no choice but to fashion such guidelines by judicial decree in such manner as may seem to the Court best adapted to meet the requirements of the constitution, and comply with our responsibility.
The petition for the writ is denied and the cause is dismissed.
It is so ordered.
ERVIN, CARLTON, BOYD and DEKLE, JJ., concur.