401 So.2d 824 (1981)
INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES, AFL-CIO, LOCAL 1010, Appellant,
v.
Mary Winn ANDERSON, Appellee.
No. 80-524.
District Court of Appeal of Florida, Fifth District.
June 10, 1981.
Rehearing Denied July 23, 1981.
*827 Joseph H. Williams of Troutman, Parrish & Williams, P.A., Winter Park, for appellant.
Patricia Winn Carter of Carter & Stalnaker, Winter Park, for appellee.
Stuart M. Lerner, Staff Counsel, Public Employees Relations Commission, Tallahassee.
ORFINGER, Judge.
International Brotherhood of Painters and Allied Trades, AFL-CIO, Local 1010 (the Union), appeals[1] from an order of the Public Employees Relations Commission (PERC) finding the Union guilty of unfair labor practices and ordering a new collective bargaining agreement ratification election.
On July 16, 1979, Mary Winn Anderson, appellee, filed an unfair labor practice complaint against the Union, charging that it violated Rule 38D-20.02, Florida Administrative Code, in conducting a ratification election on a new collective bargaining agreement. The Union represents a bargaining unit composed of certain non-instructional employees of the School Board of Brevard County. At the time of the ratification vote, there were approximately 1700 to 1800 members of the unit, of which about 700 were members of the Union.
Appellee, a school office clerk employed at Madison Middle School and a non-union member of the bargaining unit, brought the unfair labor practice charge in her own name. She and other non-union members of the bargaining unit claimed that the Union did not post notices of the proposed changes to the collective bargaining agreement or of the date, time and place of the ratification meeting and that they had received no personal notice of the proposed revisions. Appellee contended that the Union's conduct violated section 447.501(2)(a), Florida Statutes (1979), by excluding from its ratification procedures the employees of the unit who were not union members.
An evidentiary hearing was held before a PERC hearing officer and the following facts were developed. A "Special Notice" was directed to Union members informing them of proposed changes in the collective bargaining agreement and of the time and place of the ratification vote. This notice was not sent to non-union members of the bargaining unit. While the Union had instructed its stewards to post Union notices on bulletin boards at worksites, the steward at appellee's school (Madison) testified she did not post the notice and first saw it on the bulletin board after the ratification vote.
*828 Twenty other non-union employees representing six schools were produced by appellee and testified they did not see any notice regarding the upcoming ratification vote or proposed changes in the agreement at locations where they customarily observed notices to employees. Some of the witnesses and appellee admitted that they read about the agreement in a local newspaper. In addition, appellee saw a copy of the "Special Notice" at least five days prior to the ratification vote and copied the proposed changes in the collective bargaining agreement. She subsequently telephoned the School Board and was informed that she was eligible to vote on ratification and in fact cast a ballot in the June 9, 1979 election.[2]
The Union neither mailed nor posted notices to non-union members informing them of their eligibility to vote, though at no time did Union officials tell such employees that they were ineligible to vote. A secretary of the Union and a Union member testified that, when asked, they informed bargaining unit members that they were eligible to vote regardless of Union membership. The Union additionally had negotiating team members available at the election meeting to answer questions regarding the proposed changes.
The final vote indicated that a total of 166 ballots were cast, with 11 being from non-union employees and the agreement was ratified by a margin of approximately five to one.
The hearing officer issued a recommended order finding that the Union engaged in unfair labor practices and the Union filed exceptions. On May 5, 1980, PERC issued its final order in which it found, inter alia, that:
(1) Appellee had standing to file the instant unfair labor practice complaint;
(2) The Union engaged in an unfair labor practice under section 447.501(2)(a),[3] Florida Statutes, by failing to notify non-union employees of the date, time and place of the ratification election, of their eligibility to vote, and of the terms of the proposed agreement; and
(3) by engaging in the above acts the Union interfered with, restrained and coerced non-union public employees in the free exercise of the rights guaranteed them by section 447.301(1),[4] Florida Statutes, thereby engaging in an unfair labor practice under section 447.501(2)(a).
The Commission ordered a new ratification election and required the Union to pay appellee a reasonable attorney's fee and costs of litigation. It did not consider the Union's claim that Rule 38D-20.02, Florida Administrative Code, which governs ratification procedures was unconstitutionally vague and ambiguous and invades the Union's first amendment rights by coercing "speech," contending that it had no jurisdiction to make that determination.
We first consider the Union's claim that Rule 38D-20.02[5] is unconstitutionally *829 vague and is violative of the Union's first amendment rights by requiring the Union to communicate with non-union members of the bargaining unit.
This rule was promulgated to effectuate the mandate of section 447.309(1), Florida Statutes, which provides that a collective bargaining agreement is not binding on a public employer until it is ratified "by public employees who are members of the bargaining unit." Section 447.309(4) requires ratification "by a majority vote of employees voting in the unit, in accordance with procedures adopted by the Commission."
Since the Public Employees Relations Act gives all employees of a bargaining unit the right to vote on ratification, Rule 38D-20.02 was designed to guarantee that all unit employees are provided with a reasonable opportunity to freely exercise their right to vote in an informed manner.
The Union maintains that the rule is vague in that it fails to alert the bargaining agent of what is required at a "ratification meeting." A statute or rule will withstand constitutional scrutiny under a void for vagueness challenge if it is specific enough to give persons of common intelligence and understanding adequate warning of the proscribed conduct. Sanicola v. State, 384 So.2d 152 (Fla. 1980); Reynolds v. State, 383 So.2d 228 (Fla. 1980). We hold that the rule sufficiently measures up to this standard.
Here the Union's breach of Rule 38D-20.02 occurred because of its failure to provide adequate advance notice to all unit employees of the ratification meeting and of the fact that all were eligible to vote. The rule unambiguously requires this and hence the Union's claim of vagueness is unconvincing.
The Union's claim that the rule violates its first amendment rights in that it "coerces speech" refers to the requirement that the Union notify all employees of the ratification meeting and inform them of the substance of the collective bargaining agreement. It is true that in certain situations, the state is prohibited under the first amendment from requiring an individual or entity to speak or provide an opportunity for others to speak. See, e.g., West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (compelling a school child to recite the pledge of allegiance); Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (statute requiring newspaper to give political candidate equal space to respond to editorial criticism); Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (statute required display on car license plate of a patriotic motto repugnant to a Jehovah's Witness).
However, where an entity seeks a governmentally bestowed benefit which can only be granted to a limited number and whereby it serves as a proxy for others, the government may constitutionally require that the entity present divergent viewpoints as a condition of granting the benefit. See, e.g., Red Lion Broadcast Co. v. F.C.C., 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Combined with this principle is the recognition by the United States Supreme Court of the fundamental importance of ensuring dissemination of information and free discussion in the realm of labor relations. See Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
In the instant case, the Union is acting in a representative capacity, as bargaining agent for all employees of the bargaining unit, both union and non-union. It has received a benefit from the state (certification *830 and all the rights and privileges accruing thereto under Chapter 447, Part II), which carries with it the requirement that all employees be provided with an opportunity to be informed of information affecting their employment. In fact, to forbid such a requirement would "snuff out" the free speech of non-union employees who would be inhibited in receiving and discussing information related to collective bargaining agreements which directly affect them. The Union and its members' right to their views remains undisturbed, but the Union has no constitutional right to require others to submit to its views (join the Union) or forego being informed regarding the terms and conditions of their employment.[6]
The Union next argues that appellee lacked standing to file the charge, maintaining that she did not suffer any injury and that her rights were not affected by any action or inaction of the Union. In addressing this argument, PERC declared:
"Where, as alleged in the instant case, a certified bargaining representative unlawfully deprives a large number of unit employees of a fair and reasonable opportunity to participate in the ratification of a proposed collective bargaining agreement, each and every unit employee sustains an injury which he or she may seek to remedy by invoking the unfair labor practice procedures... . Where as here, the vote is in favor of ratification, the unit employees in favor of ratification are injured because the defects in the ratification process subject the agreement to potential invalidation. Unit employees opposed to ratification are injured because they have been deprived of their right to a ratification process which provides each and every unit employee a fair and reasonable opportunity to vote against ratification and to urge their fellow employees to do likewise... ."
We concur. When the remedial nature of the Public Employees Relations Act is considered, Maxwell v. School Board of Brevard County, 330 So.2d 177 (Fla. 4th DCA 1976), it is clear that appellee had standing as a directly affected employee to bring the instant action.
The Union next contends that appellee failed to prove her case by a preponderance of the evidence and that PERC improperly applied the "competent, substantial evidence" standard to the hearing officer's recommended order.[7]
In Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108 (Fla. 1st DCA 1978), the court explained that in an unfair labor practice proceeding, the burden is upon the charging party to prove, by a preponderance of the evidence, a violation of Chapter 447, Part II. This is a burden before the hearing officer. However, the court said, the Commission, when reviewing the hearing officer's recommendations, shall evaluate them pursuant to the procedure set forth in section 120.57(1)(b)(9), Florida Statutes.[8] This provision in essence requires that before PERC reject or modify the hearing officer's findings of fact, it first determine that such findings are not based on competent, substantial evidence. Pasco County at 118.
In the instant case, the hearing officer was therefore obliged to follow the "preponderance" test and PERC did not err in limiting its determination to the question *831 of whether competent, substantial evidence existed to support the hearing officer's findings. Neither did it err in concluding that there was such competent, substantial evidence before the hearing officer.
The Union also argues that no nexus exists between the lack of notice and the outcome of the election, since the failure of the twenty testifying witnesses to vote could not have affected the outcome of the election. While the twenty votes could not have affected the outcome, this argument misses the point, which is that there is sufficient evidence to support PERC's determination that there was such a defect in notice that few of the non-union members even knew that they could vote, and thus did not participate. Since only a total of 166 votes were cast out of a total membership in the bargaining unit of 1800 employees, 1000 to 1100 of whom were not union members, we cannot say that PERC abused its discretion in determining that the lack of notice to non-union employees significantly affected the election and in ordering a new election to remedy the unfair labor practice. Sec. 447.503(6)(a), Fla. Stat. (1979).
The contention that PERC erred in concluding that the Union's conduct constituted an unfair labor practice is likewise without merit. Under the federal National Labor Relations Act,[9] a union has the duty, derived from its status as certified exclusive bargaining agent to represent fairly all employees in the unit, which duty applies to all workers in the unit, not merely to its own members. International Brotherhood of Teamsters v. NLRB, 587 F.2d 1176 (D.C. Cir.1978).
Breach of this duty of fair representation violates section 8(b)(1)(A)[10] of the NLRA for it tends to encourage workers to join, or discourages them from joining, certain unions, thus restraining them in the free exercise of their section 7 rights.[11]International Brotherhood at 1181. Where a Florida statute is patterned after a federal law on the same subject, it will take the same construction in Florida courts as its prototype has been given in the federal courts insofar as such construction is harmonious with the spirit and policy of the Florida legislation on the subject. Pasco County, at 116.
PERC's promulgation of Rule 38D-20.02 was obviously designed to effectuate the principle of fair representation. The Commission found that competent substantial evidence existed to support a finding that the Union violated this rule by failing to provide adequate notice to non-union employees. The Commission also found that the Union discriminatorily failed to provide notice to non-union members while providing notice to its own members and that this violated section 447.501(2)(a). Since this conclusion is based on competent, substantial evidence, we find no error.
Lastly, appellant complains of error in the award to appellee of attorney's fees under section 447.503(6)(c).[12] The Commission determined that the Union "knew or should have known that its conduct was in violation of section 447.501(2)(a)," and determined that an award of attorney's fees was appropriate. Appellant fails to show that this constitutes an abuse of discretion by the Commission.
Having found no error, we grant appellee's motion for the award of appellate costs and attorney's fees pursuant to section 447.504(3), Florida Statutes (1979),[13] and remand *832 the cause to the Commission for the determination of these costs and fees in accordance with the procedures set forth in Florida Administrative Code Rule 38D-14.04.
The order appealed from is AFFIRMED.
DAUKSCH, C.J., and COWART, J., concur.
NOTES
[1] Fla.R.App.P. 9.030(b)(1)(C); Section 447.504(1), Florida Statutes (1979).
[2] One of appellee's other witnesses, Karen Connell, who also worked at Madison Middle School, testified she also voted.
[3] Section 447.501(2) provides:

A public employee organization or anyone acting in its behalf ... is prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part...
[4] Section 447.301(1) provides:

Public employees shall have the right to form, join, and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing.
[5] "38D-20.02 RATIFICATION BY MEMBERS OF BARGAINING UNIT:

(1) The certified bargaining agent shall promptly present the proposed agreement to the members of the bargaining unit for consideration and ratification. The certified bargaining agent shall give notice of any ratification meeting at least five (5) days prior to such meeting, unless otherwise allowed by the Commission. The notice shall be posted in conspicuous locations so that all members of the bargaining unit will reasonably be apprised of the meeting.
(2) The notice shall contain the following information:
(a) The date, time and place of the meeting;
(b) That the meeting is open to all members of the bargaining unit regardless of membership in the employee organization;
(c) That all members of the bargaining unit are eligible to vote; and
(d) That a copy of the proposed collective bargaining agreement is available for inspection at a specified location.
(3) The vote taken at a ratification meeting shall be by secret ballot of all members of the bargaining unit attending the meeting. The vote shall be publicly counted and the results announced at the conclusion of voting and counting.
[6] Art. 1, § 6 Florida Constitution, provides that the:

right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union... .
[7] In its final order the Commission stated:

Upon review of the record, the Commission finds that there is competent, substantial evidence to support all of the hearing officer's findings of fact.
[8] Section 120.57(1)(b)(9) provides:

The agency may adopt the recommended order as the agency's final order. The agency in its final order may reject or modify the conclusions of law ... but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record ... that the findings of fact were not based upon competent substantial evidence... .
[9] Title 29 U.S.C. § 151 et seq., (1974).
[10] 29 U.S.C. § 158(b)(1)(A), which is the counterpart to section 447.501(2)(a), Florida Statutes.
[11] 29 U.S.C. § 157, which is the Federal counterpart to section 447.301(1), Florida Statutes.
[12] § 447.503(6)(c):

The commission may award to the prevailing party all or part of the costs of litigation, reasonable attorney's fees, and expert witness fees whenever the Commission determines that such an award is appropriate.
[13] § 447.504(3) provides in part:

The court may award to the prevailing party all or part of the costs of litigation and reasonable attorney's fees and expert witness fees whenever the court determines that such an award is appropriate.