500 So.2d 508 (1986)
UNITED TEACHERS OF DADE, FEA/UNITED AFT, LOCAL 1974, Afl-Cio, et al. Petitioner,
v.
DADE COUNTY SCHOOL BOARD, Superintendent Leonard Britton, and the State Board of Education of the State of Florida, Respondents.
No. 67430.
Supreme Court of Florida.
December 24, 1986.
Elizabeth J. Du Fresne of Du Fresne and Bradley, Coconut Grove, for petitioner.
Frank A. Howard, Jr., and Gerald A. Williams of Haygood & Williams, Miami, and Judith A. Brechner, General Counsel, State Board of Education, Tallahassee, and Leonard A. Carson and Richard T. Donelan, Jr. of Carson & Linn, P.A., Tallahassee, for respondents.
Thomas W. Young III, General Counsel, FEA/United, Tallahassee, for intervenors.
EHRLICH, Justice.
In December 1984, petitioner, the United Teachers of Dade (UTD), filed a threecount complaint in the Eleventh Judicial Circuit, in and for Dade County, seeking declaratory and injunctive relief against respondents, the Dade County School Board, its Superintendent, and the State Board of Education (State Board). Petitioners alleged that the so-called "Master Teacher Program," sections 231.533 and 231.534, Florida statutes (Supp. 1984), and rule 6A-4.46, Florida Administrative Code, was unconstitutional in that the program infringed on petitioner's collective bargaining rights guaranteed by article I, section 6, Florida *509 Constitution. Petitioner voluntarily dropped two counts of the complaint in order to expedite determination of the constitutional issue; the respondent State Board's request for change of venue to Leon County was granted. Leon County Circuit Judge Miner granted nine motions to intervene filed by teachers' unions representing teachers in Martin, Lake, Sarasota, Brevard, Charlotte, St. Lucie, Pasco, Broward and Alachua counties.
The trial court entered an "Order on Motion for Judgment on the Pleadings" declaring that the Master Teacher Program did not violate article I, section 6. On appeal, the First District Court of Appeal affirmed, adopting the opinion of the trial court in its entirety, and certified the following question as being of great public importance:
IS FLORIDA'S MASTER TEACHER PROGRAM (FLORIDA STATUTES SECTIONS 231.533 and .534 (SUPP. 1984)) AN ABRIDGEMENT OF THE CONSTITUTIONALLY GUARANTEED RIGHT TO COLLECTIVE BARGAINING?
472 So.2d 1269, 1271 (Fla. 1st DCA 1985). We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and answer the question in the negative. However, the reasoning and analysis we employ in reaching this result differs from that utilized below.
The legislative intent underlying section 231.533 is stated in the preamble:
There is established the State Master Teacher Program, the purpose of which is to recognize superior ability among Florida's instructional personnel and to provide an economic incentive to such personnel to continue in public school instruction. A person may participate in the program as an associate master teacher or as a master teacher; such participation shall be voluntary.
Section 231.533(1) sets forth the criteria which must be met in order to qualify as an associate master teacher; similarly, section 231.533(2) sets forth the requirements to qualify as a master teacher. Section 231.533(1)(b)2 contemplates the creation and utilization of "subject area examinations" which, once established and approved pursuant to section 231.534, both associate master and master teacher candidates must submit to in order to qualify for the award. Section 231.533(5)(a) provides for an annual award of $3,000 to those ultimately selected as the most highly qualified instructional personnel. Section 231.533(4) provides that the ultimate number of award recipients will be determined by the amount the legislature appropriates.
Petitioners (UTD and the Intervenors) characterize this statutory payment as a "merit wage" and allege that this direct payment to teachers, bypassing as it does the teacher's constitutionally recognized right to bargain over wages, amounts to nothing more than "old time union busting in a new state-approved incarnation." Respondent,[1] on the other hand, claims that the teachers wish nothing less than to force the legislature and the state board to bargain with them, and further claim that the "unions are not attempting to vindicate legitimate teacher collective bargaining rights, but are merely attempting to destroy a program with which they disagree as a matter of policy." Neither characterization is accurate and it is worthy of emphasis at the outset that the wisdom of this program is not for our review. We agree with the observation of the Supreme Court of Nebraska when faced with similar arguments:
Whether or not the legislature has acted wisely in the premises is not a matter for judicial determination. The courts are not arbiters of legislative wisdom, but function as a check upon unauthorized and unconstitutional assumptions of power.
School District of Seward Education Association v. School District of Seward, 188 Neb. 772, *510 783, 199 N.W.2d 752, 759 (Neb. 1972).
The sole and narrow issue before us is whether the legislature and the State Board of Education, acting pursuant to their respective authority under article IX, section I and section 2, in enacting and implementing the Master Teacher Program, have intruded on the right to collective bargaining guaranteed public employees by article I, section 6.
The broad rights of public employees to join labor unions and bargain collectively is of relatively recent origin in Florida, having first found its expression in article I, section 6 of the Constitution of 1968. In Dade County Classroom Teachers Association, Inc. v. Ryan, 225 So.2d 903, 905 (Fla. 1969), we held that "with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees by Section 6." In Dade County Classroom Teachers Association, Inc. v. The Legislature, 269 So.2d 684, 687 (Fla. 1972) (The Legislature), we reaffirmed our holding in Ryan, and stated:
The question of the right of public employees to bargain collectively is no longer open to debate. It is a constitutionally protected right which may be enforced by the courts, if not protected by other agencies of government.
In both Ryan, 225 So.2d at 906, and in The Legislature, 269 So.2d at 684, we recognized that the legislature had the authority and duty to enact guidelines implementing the rights guaranteed by article I, section 6. In fact, The Legislature dealt, in large part, with this Court's responsibility to fashion appropriate guidelines should the legislature fail to do so.
Subsequent to our mandate in The Legislature, Part II of Chapter 447, Ch. 74-100, Laws of Florida, was enacted to implement article I, section 6. In City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487 (Fla. 1981), we had our first occasion to review the legislature's regulation of public employees' bargaining rights. The issue before us was the constitutionality of the legislature's attempt to remove retirement matters from the collective bargaining process. In finding these sections of Chapter 447 unconstitutional, we agreed with the reasoning of the district court, who, relying on our decision in Ryan, held that since private employees had the right to bargain as to retirement benefits, public employees must also. We explicitly rejected the City's argument that the sections in question did not infringe or abridge bargaining rights, but only represented a reasonable regulation by the legislature of the "scope" of the rights guaranteed by article I, section 6:
This argument seems to us an exercise in semantics which ignores the real impact of the deleted phrases. The two sections, as enacted, affected much more than the "scope" of collective bargaining by public employees. Their practical effect, in barring negotiations on retirement matters, was to eliminate a significant facet of the collective bargaining process. To prohibit bargaining on so important an aspect of an employment agreement is, in our judgment, an abridgment of the right to collectively bargain.
Id. at 489.
Sub judice, the trial court below premised its decision that the program is constitutional in part on the legislature being a "stranger to the employment relationship." We find this too to be an "exercise in semantics" which ignores the real impact or practical effect legislation may have on the rights guaranteed by article I, section 6.[2]City of Tallahassee; See also United *511 Faculty of Florida, Local 1880 v. Board of Regents, 365 So.2d 1073 (Fla. 1st DCA 1979). It would be an abdication of our duty to protect and enforce constitutionally guaranteed rights were we to base our holding on such a tenuous premise. Cases arising from disputes between local school boards (the legally defined "employer," section 447.203(2)) and teacher's bargaining representatives may produce different factual or procedural scenarios than do cases arising because of legislative action allegedly impacting unconstitutionally upon collective bargaining rights. The correct analysis of each of these situations, however, must encompass not only the legislature's, the State Board of Education's, or the local school board's constitutional authority to make educational policy decisions, but also must focus on the impact such decisions have on public employees constitutionally guaranteed collective bargaining rights. Constitutional provisions are to be construed so as to make them meaningful. Plante v. Smathers, 372 So.2d 933 (Fla. 1979).
Employing this analysis to the issues before us, it is clear that sections 231.533 and 231.534 reflect a legislative policy decision, enacted pursuant to article IX, section 1, which contemplates encouraging superior instructors to continue teaching in Florida's public schools. The program is to be of uniform, statewide application. The qualification of a participant as either an associate master teacher or as a master teacher is partially predicated upon a candidate's score on the subject area examination outlined in section 231.534, which envisions a uniform statewide test for all participants in his or her subject area. Section 231.533(5)(a) sets a uniform amount ($3,000) to be paid each teacher eventually chosen as a master, or associate master, teacher. Although the total number of recipients will ultimately be determined by the amount the legislature appropriates (section 231.533(4)), subsection (5)(b) directs that in no case will the award be less than $3,000. Section 231.533(1)(c)2 directs that once designated as an associate master teacher that designation is transferable among the school districts of the state. To like effect is section 231.533(2)(d), which contains an identical provision for master teachers. In short, the statutes and the administrative rule in question contemplate a uniform statewide program specifying an unvarying monetary amount payable to eventual recipients; a uniform system of criteria (including the statewide subject area examinations) for determining who the eventual recipients will be; and finally, the policy decision that those who eventually are designated as associate master, or master, teachers shall be recognized as such in any school district in the state.
Prior to the adoption of article I, section 6, it could be easily asserted that such a uniform program clearly comes within the purview of article IX, section I's mandate that the legislature shall provide for a uniform system of public education, and article IX, section 2, which grants the State Board of Education supervisory powers. However, article I, section 6 grants public employees rights they did not have previously, and the days of totally unilateral legislative power over all educational personnel matters are gone. City of Tallahassee; accord Clark County School District v. Local Government Employee Management Relations Board, 90 Nev. 442, 530 P.2d 114 (1974). The question before us now is whether an award such as that provided by section 231.533 is a subject over which private employees have a right to bargain.
Petitioners, like private and other public employees, have the right to bargain over wages and terms and conditions of employment. Petitioners correctly point out that bypassing the employees' bargaining agent to negotiate directly with employees violates the duty to bargain collectively in the private sector, Medo Photo Supply *512 Corp. v. NLRB, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944), as does the unilateral grant of a merit increase (i.e., a change in condition of employment), NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). See also City of Ocala v. Marion County Police Benevolent Association, 392 So.2d 26 (Fla. 1st DCA 1980).
Whether the payment provided by the Master Teacher Program comes within the definition of wages or terms and conditions of employment is the essential question before us. This identical phraseology is found in the National Labor Relations Act, 29 U.S.C.A. § 158(d), and Florida courts have on occasion looked to federal decisions for guidance in interpreting this phrase. See, e.g., City of Orlando v. Public Employees Relations Commission, 435 So.2d 275 (Fla. 5th DCA), review denied, 443 So.2d 980 (Fla. 1983); International Brotherhood of Painters, Local 1010 v. Anderson, 401 So.2d 824 (Fla. 5th DCA), review denied, 411 So.2d 382 (Fla. 1981). Our holding in Ryan that "public employees have the same rights of collective bargaining as are granted private employees," 225 So.2d at 905, did not, however, mean that there exists no differences between public and private employee bargaining. Indeed, we recognized as much in City of Tallahassee by stating that "[i]t would be impractical to require that collective bargaining procedures ... be identical in the public and the private sectors." 410 So.2d at 491. Myriad distinctions, not just those of procedures, exist between public and private collective bargaining, and have been noted by the highest courts of several sister states. See, e.g., West Hartford Education Association, Inc. v. DeCourcy, 162 Conn. 566, 295 A.2d 526 (1972) (private sector view of wages, hours, and terms and conditions of employment is not easily superimposed on the field of education); Spokane Education Association v. Barnes, 83 Wash.2d 366, 517 P.2d 1362 (1974) (area of management control in private sector different than the duty imposed on those who manage schools). We find wise the counsel of Justice Nix, speaking for the Supreme Court of Pennsylvania:
[W]e are not suggesting that the experience gained in the private sector is of no value here, rather we are stressing that analogies have limited application and the experiences gained in the private employment sector will not necessarily provide an infallible basis for a monolithic model for public employment.
Pennsylvania Labor Relations Board v. State College Area School District, 461 Pa. 494, 500, 337 A.2d 262, 264-265 (Pa. 1975).
As the case before us vividly demonstrates, some issues arising in the public employment arena would not arise in the private sector. While the existence of an "award program" designed to encourage private employees to continue employment in a given profession could theoretically be devised by an eleemosynary organization not a designated participant in the bargaining process, such a scenario appears to us to be highly unlikely. What we have before us is simply a unique situation.
Petitioners claim that the payment provided by the Master Teacher Program is a "merit wage" as it arises solely out of the teacher's employment as a public school teacher. While it is true that only public school teachers may compete for this award payment, we cannot adopt such a broad view of the scope of bargainable matters, as, in our view, the payment in question here cannot honestly be considered "a wage," or fit within the ambit of a "term or condition of employment."
We have surveyed the pronouncements from several jurisdictions for guidance in making this determination. The decisions are of limited utility in the sense that the cases have turned upon conflicting statutory provisions, and are factually distinguishable, as they typically involve disputes between local school boards and teachers' bargaining representatives.[3] As *513 petitioners inform us, Florida's constitutional recognition of public employees' bargaining rights is unique among the states. Respondent informs us that the constitutionally empowered State Board of Education is also unique among the states. However, several applicable general principles are discernible from the case law.
The most widely recognized analytical device has been to determine whether a particular subject represents a question of "educational policy" or whether it is a "condition of employment." This distinction is of limited utility however, as the Supreme Court of Connecticut has aptly observed:
Many educational policy decisions make an impact on a teacher's conditions of employment and the converse is equally true. There is no unwavering line separating the two categories.
West Hartford Education Association, Inc. v. DeCourcy, 162 Conn. at 581, 295 A.2d at 534. Most courts therefore have determined the issues on a case-by-case basis, but, as a starting point for their analysis, have tended to view the test of bargainability as the degree of impact on wages, hours or other conditions of employment. See, e.g., National Education Association of Shawnee Mission, Incorp. v. Board of Education, 212 Kan. 741, 512 P.2d 426 (Kan. 1973) (the key is how direct the impact of an issue is on the well-being of the individual teacher, as opposed to its effect on the operation of the school system as a whole); School District of Seward Education Association v. School District of Seward (bargainable issues should coincide with those matters directly affecting the teacher's welfare); Clark County School District v. Local Government Employee Management Relations Board, 90 Nev. 442, 530 P.2d 114 (1974) (the test is whether an issue significantly relates to wages, hours or terms and conditions of employment); State of New Jersey v. State Supervisory Employees Association, 78 N.J. 54, 393 A.2d 233 (1978) (bargainable matters are those which intimately and directly affect the work and welfare of public employees and on which a negotiated agreement would not significantly interfere with the exercise of inherent management prerogative pertaining to the determination of governmental policy); Sutherlin Education Association v. Sutherlin School District, 25 Or. App. 85, 548 P.2d 204 (1976) (courts should balance the element of educational policy against the effect the subject has on a teacher's employment); Pennsylvania Labor Relations Board v. State College Area School District, (courts should balance whether the impact outweighs its probable effect on the basic policy of the system as a whole); Aberdeen Education Association v. Aberdeen Board of Education, 88 S.D. 127, 215 N.W.2d 837 (1974) (test is whether the subject materially affects the terms and conditions of employment); City of Beloit v. Wisconsin Employment Relations Commission, 73 Wis.2d 43, 242 N.W.2d 231 (1976) (the test is whether a subject is primarily related, as in fundamentally or basically, to wages, hours or terms and conditions of employment).
In Fort Dodge Community School District v. Public Employment Relations Board, 319 N.W.2d 181 (Iowa 1982), the Supreme Court of Iowa was confronted with an issue similar to the one before us. Faced with a declining enrollment in their district, the local school board unilaterally adopted a plan to provide a cash incentive to teachers in order to encourage teachers who had reached sixty years of age or more to take an early retirement. The teachers' association argued that the payment was a wage or supplemental pay, and was therefore a subject for collective bargaining. Although the eventual determination of the issue rested on the court's conclusion that the legislature did not intend the statutory definition of a wage to include all "wage-related remunerations," id. at 183, we find illuminating the court's reasoning as to why this payment was not a wage or supplemental pay. The court reasoned that the incentive payment in *514 question was not a wage, as that term in its commonly understood meaning "would not include payment for services not rendered or labor not performed." Id. at 184. Similarly, the payment was not supplemental pay as there were no additional services rendered by the recipient teachers. The court distinguished supplemental pay from wages, as the former contemplates additional services rendered over and above the wages payable under the teacher's basic contract, such as a teacher who performs extra duties as a coach. Id.
We find this reasoning persuasive for determining the issue before us. Under the Master Teacher Program, no additional teaching services are required to be performed by the teachers who voluntarily choose to compete for the payment authorized by section 231.533. As the petitioners point out, the existing contracts with the respective school boards already contain provisions, arrived at after collective bargaining, which compensate teachers for extra-curricular labors such as coaching. Likewise, their contracts contain duly negotiated provisions for determining entitlement to true merit increases. The payment in question here does not replace or interfere in any way with those bargained-for provisions. Nothing in the pleadings shows that the payments in question, nor the concomitant designation of a teacher as an associate master or master teacher, is to be used as criteria for future promotions or as a basis for additional compensation (other than the statutory payment) which would arguably be within the ambit of collective bargaining. Since we find the payment under section 231.533 not to be a wage, we find that the subject area test, section 231.534, and the administrative rule, as uniform procedures adopted solely to implement the Master Teacher Program, do not abridge the petitioners' rights guaranteed by article I, section 6.
Petitioners have argued before us that the constitutionally "correct" method for the legislature to establish policies of uniform statewide application, is for the legislature to set forth minimal standards which must be met, and then to allow the local school boards and the teachers' bargaining representatives to negotiate over the implementation of those standards.[4] Petitioners point to the so-called "Merit School Plan," section 231.532, Florida Statutes (Supp. 1984) as illustrative of this constitutionally correct approach; section 231.532(2)(a) provides that certain of the collective bargaining procedures of Chapter 447 shall be utilized in developing and adopting local programs to further the objectives of the statute. We recognize that such a remedy has been judicially mandated on occasion in other jurisdictions. See e.g., West Hartford Education Association, Inc. v. DeCourcy; Sutherlin Education Association v. Sutherlin School District; Joint School District No. 8 v. Wisconsin Employment Relations Board, 37 Wis.2d 483, 155 N.W.2d 78 (1967). However, our holding that the payment provided by the Master Teacher Program is not a wage, thus not an abridgment of article I, section 6, obviates the need for us to consider this possibility here.
In conclusion, we answer the certified question in the negative thereby approving the result reached by the district court below.
It is so ordered.
McDONALD, C.J., and ADKINS, OVERTON and SHAW, JJ., concur.
BOYD, J., dissents with an opinion, in which BARKETT, J., concurs.
BOYD, Justice, dissenting.
I cannot join the majority opinion because it is at variance with the applicable precedents. By attempting to provide extra compensation to certain individual employees covered by union contracts, the master-teacher legislation violates the right *515 to public employees to bargain collectively through labor organizations.
Article I, section 6 of the Florida Constitution creates a fundamental right expressed as follows: "The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged." The meaning of this provision and the nature and extent of the rights existing thereunder have been discovered and determined by court decisions. The processes by which the rights are implemented and protected have been established by statute. It is clear, however, that the legislature has no power by statute to limit or abridge the constitutional right established by article I, section 6.
Very soon after the adoption of the above-quoted language of article I, section 6, this Court held "that with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees by Section 6." Dade County Classroom Teachers' Association, Inc. v. Ryan, 225 So.2d 903, 905 (Fla. 1969) (footnote omitted).
In Dade County Classroom Teachers Assn., Inc. v. The Legislature, 269 So.2d 684 (Fla. 1972), we pointed out that, regardless of one's personal views on the wisdom of allowing collective bargaining for public employees, "the people of this State have now spoken on this question in adopting Section 6 of Article I, supra. The question of the right of public employees to bargain collectively is no longer open to debate. It is a constitutionally protected right which may be enforced by the courts, if not protected by other agencies of government." Id. at 687.
These early cases made clear that public employees had collective bargaining rights that were coextensive with the rights of private-sector workers recognized under Florida constitutional and statutory law. It was later made clear that in determining what these rights are, it is appropriate to look for guidance to the private-sector labor law principles existing under the laws of the United States. In City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487 (Fla. 1981), we rejected the argument that the collective bargaining rights of public employees in Florida should be any different from those of "private employees" under "federal labor laws." Id. at 490. I agree that regulation of the procedures used for public employees' collective bargaining in Florida is within the legislative province and may vary from those employed in the private sector. The constitutional right to collective bargaining in Florida, however, may not be abridged by the legislature. Id. I therefore disagree with the majority's statement that the scope and substance of public employees' collective bargaining rights is any different from those applicable to private sector employees under federal law.
The constitutional right of public employees to bargain collectively encompasses wages, hours, and other terms and conditions of employment. See § 447.309(1), Fla. Stat. (1983). We have indicated that these areas of mandatory bargaining are broad in scope and include many subjects reasonably related or connected to the subjects of wages, hours, and terms and conditions of employment. In City of Tallahassee v. Public Employees Relations Commission, we held that the subject of rights and benefits under retirement pension plans could not be legislatively removed from the field of collective bargaining.
Moreover, the phrase, "wages, hours, and terms and conditions of employment" needs no broad construction in order to be seen to include the subject of "merit pay," however characterized. The majority concludes that the merit pay provided for by section 231.533, Florida Statutes (Supp. 1984), is not "wages" and does not affect "terms and conditions of employment." The reasons given in support of this conclusion are not persuasive. Indeed, I find that the "Master Teacher Program" established in sections 231.533 and 231.534 was specifically intended to and does have direct impact upon teachers' wages and other terms and conditions of their employment.
Section 231.533(1) provides that to qualify as an associate master teacher, a person *516 must have four years of teaching experience, have a master's degree or have a poststandard or regular certificate at the vocational level of training or pass a subject-area examination, and most importantly, achieve a superior performance evaluation. To qualify as a master teacher, a person must meet these same requirements plus have seven years of teaching experience and three years of experience as an associate master teacher. § 231.533(2), Fla. Stat. (Supp. 1984). The requirement that the teacher must achieve a superior performance evaluation, which the majority opinion completely ignores, is highly significant and clearly establishes that the merit pay is a wage and does have an impact on teachers' conditions of employment.
Specifically, section 231.533(1)(c)1. provides that the school principal shall conduct an evaluation "using a reliable, valid, and normed performance evaluation system approved by the State Board of Education." Pursuant to this section, the State Board of Education has promulgated Rule 6A-4.46, Florida Administrative Code. Under this Rule a single school district or state-supported school or group of each must prepare a performance measurement system that must be approved by the State Board of Education. Subsection (5)(e)3.b. requires that this performance measurement system include behavior indicators which "describe the specific behaviors demonstrated by teachers when their performance conforms to the concept of effective and ineffective teaching." An appeal process and a reevaluation process must be established for those who contest their evaluation scores. § 231.533(1)(c)1., Fla. Stat. (Supp. 1984). The reevaluation shall be performed by a third person jointly agreed upon by the teacher and the teacher's principal utilizing the same approved performance measurement system. Rule 6A-4.46(5)(d), Fla. Admin. Code.
As can be seen, this elaborate procedure is designed to link the merit pay with specifically described behavior. Teachers are not rewarded for past services, but rather for future teaching services that conform to the requirements specified in the performance measurement system. In other words, contrary to what the majority opinion suggests, this program is not an "award program" designed to encourage teachers to continue employment. Instead it is an incentive-based remuneration program that increases the salaries for at least three years of those who alter their teaching methods to achieve superior teaching performance.
The majority's reliance on the decision in Fort Dodge Community School District v. Public Employment Relations Board, 319 N.W.2d 181 (Iowa 1982), is misplaced. In that case the school district adopted a plan to provide monetary incentives for early retirement for teachers sixty years of age or older. A complaint was filed with the Public Employment Relations Board which found the plan was subject to mandatory bargaining and that the school district violated the law by adopting it unilaterally. On appeal, the Supreme Court reversed, noting that the Iowa statute listing the items subject to mandatory bargaining was to be narrowly applied. The court reasoned that because the list of items subject to mandatory bargaining included, in addition to wages, wage-related items such as insurance, vacations, overtime compensation, and supplemental pay, the legislature had not intended the term "wages" to include all "wage-related" remunerations. The court noted that a wage was a sum paid for services rendered and that supplemental pay was a sum paid for additional services rendered. It then rejected the argument that the services being rendered were the teachers' retiring earlier to help alleviate budgetary problems, finding that early retirement was not the type of service envisioned by the legislature when it passed the statute listing mandatory subjects of bargaining.
The majority opinion in this case fails to note that the reason the Iowa Supreme Court narrowly construed the Iowa statute does not exist here. Section 447.309(1), which was enacted to implement the provisions of article I, section 6, provides that the bargaining agent for an employee organization *517 "shall bargain collectively in the determination of the wages, hours, and terms and conditions of employment." Because this language does not give a detailed list of wage-related items and because it was enacted to protect a constitutional right, we should give it and have given it a liberal construction. Furthermore, the majority opinion's reasoning is faulty in concluding that the merit pay was not payment for services rendered or labor performed. Even the Iowa Supreme Court has suggested that the amount and timing of merit pay are mandatory subjects for bargaining. See Charles City Education Association v. Public Employment Relations Board, 291 N.W.2d 663 (Iowa 1980). As I have noted above, under the Master Teacher Program before us, not only services, but superior teaching performance must be rendered before one qualifies for the merit pay. Thus even the Iowa Supreme Court's restrictive definition of wages includes merit pay since it is compensation for services rendered.
As I stated above, this Court's decision in City of Tallahassee v. Public Employees Relations Commission strongly indicates that the constitutional right of public employees in Florida to bargain collectively is coextensive with that of private employees under the National Labor Relations Act and federal court decisions thereunder. It thus becomes a critical question whether under that body of law private employees are given the right to collectively bargain concerning the matter of extra compensation for selected employees. It is clear that they have such a right.
In National Labor Relations Board v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), it was held that where an employer unilaterally instituted a merit-increase plan, while negotiations were pending, such action was to "be viewed as tantamount to an outright refusal to negotiate on that subject." Id. at 746, 82 S.Ct. at 1113. "Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining contrary to the congressional policy." Id. at 747, 82 S.Ct. at 1113. The progeny of Katz make clear that any unilateral change in matters that are the subjects of mandatory bargaining, instituted by the employer during ongoing negotiations, is a violation of the duty to negotiate with the employees' collective bargaining representative. Queen Mary Restaurants Corp. v. N.L.R.B., 560 F.2d 403 (9th Cir.1977); Korn Industries, Inc. v. N.L.R.B., 389 F.2d 117 (4th Cir.1967).
Moreover, unilateral changes in wages, hours, or working conditions in disregard or violation of a collectively bargained agreement is a violation of the duty to negotiate even when negotiations are not pending. "[A]n employer may not unilaterally institute merit increases during the term of a collective agreement unless some provision of the contract authorizes him to do so." N.L.R.B. v. C & C Plywood Corp., 385 U.S. 421, 425, 87 S.Ct. 559, 562, 17 L.Ed.2d 486 (1967). The discretionary selection of particular employees for a merit increase without consultation with the union violates the law because "[n]ational labor policy ... extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees." N.L.R.B. v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967). See also Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (unilateral modification of benefits, subjects of mandatory collective bargaining, was unfair labor practice).
Under federal law, an employer is not permitted to attempt to reach an employment agreement with an individual who is part of a bargaining unit covered by a collectively bargained agreement. "[T]erms and conditions of employment can be arranged only by the majority representative, and the rules written into the collective bargaining agreement become the law of the plant for all employees." *518 Baker v. Amsted Industries, Inc., 656 F.2d 1245, 1249 (7th Cir.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 468 (1982). "The duty to bargain [on a collective basis with the authorized exclusive bargaining representative] carries with it the obligation on the part of the employer not to undercut the Union by entering into individual contracts with the employees." Morio v. North American Soccer League, 501 F. Supp. 633, 638-39 (S.D.N.Y.) aff'd, 632 F.2d 217 (2d Cir.1980). "[A] collective bargaining agreement extinguishes an individual employee's power to alter the terms of an agreement by a separate contract between himself and the employer. See Olguin v. Inspiration Consolidated Copper Co., 740 F.2d 1468, 1474 (9th Cir.1984)." Faust v. RCA Corp., 612 F. Supp. 540 (D.C.Pa. 1985).
In N.L.R.B. v. J.H. Allison & Co., 165 F.2d 766 (6th Cir.), cert. denied, 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369 (1948), the court said:
We think the logical deduction to be drawn from the opinions of the Supreme Court is that by virtue of the National Labor Relations Act the obligation of the employer to bargain collectively with representatives of its employees with respect to wages, hours and working conditions, includes the duty to bargain with such representatives concerning individual merit wage increases. The labeling of a wage increase as a gratuity does not obviate the fact that a gratuitous increase on the basis of merit does, in actuality, effectuate changes in rates of pay and wages, which are by the Act made the subject of collective bargaining.
Id. at 768.
The majority's view that the master-teacher bonus is neither a "wage" nor a "term or condition of employment" does not withstand analysis. The majority characterizes the payment as an award designed to reward good teachers and to provide an incentive for their continued employment in public education. Whether it is called salary, wages, compensation, remuneration, or pay, money paid by an employer to an employee is always given as an incentive to work. The legislature in enacting the statutory program, and the State Board of Education in implementing and defending it, have indicated their perception of a need for differential compensation among teachers. They would like to give more pay to exceptional teachers. However, "effective collective bargaining has been generally conceded to include the right of the representatives of the unit to be consulted and to bargain about the exceptional as well as the routine." Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 347, 64 S.Ct. 582, 585, 88 L.Ed. 788 (1944).
The Board of Education's argument that the foregoing principles are not applicable because it is not the employer is without merit. The $3000 bonus is to be given to selected teachers as an incident of their employment as teachers. School districts in Florida, while territorially coextensive with counties, are not independent governmental entities. School district boards embody the philosophy of local control, but in actuality they are subsidiaries or subdivisions of the state rather than separate entities. The State Board of Education is another agency of the same sovereign state. It is responsible for supervision of "the system of public education" of the state. Art. IX, § 2, Fla. Const. There is no way the State Board of Education can be considered a stranger to the employment relationship between the district board and the teacher. The state board is an "alter ego" of the district board and cannot evade the legal obligation to bargain.
I do not accept the majority's reasoning that merit pay is a necessary feature of the legislature's and the state board's responsibilities for educational policy and therefore removable from the collective bargaining context. This same kind of argument was made and rejected in City of Tallahassee v. Public Employees Relations Commission. For us to hold that all matters relating to the compensation and benefits to be paid to teachers are mandatorily bargainable need *519 not open the door so as to compel bargaining on matters of educational policy. Policy questions such as curriculum, textbooks, academic standards, academic content, student discipline, and the like, are matters to be controlled by the legislature, the state board, district boards, and district superintendents. For example, the number of hours of instruction students are to receive each day is a policy matter that can be determined by the foregoing policy-making entities even though the number of hours teachers work is a subject of mandatory bargaining.
The constitutional prohibition against infringement on teachers' right to collective bargaining does not prohibit or inhibit the legislature and the State Board of Education from instituting policies of merit pay for outstanding teachers. It simply prohibits merit pay provisions from being enacted unilaterally without negotiation. To the extent that sections 231.533 and 231.534 attempt to remove the subject of merit pay under the master teacher program from the collective bargaining arena, they violate article I, section 6 of the Florida Constitution. I therefore dissent.
BARKETT, J., concurs.
NOTES
[1] The Dade County School Board and its Superintendent have not advocated a position on the constitutional issue. Their position before this Court has solely been to ask us to determine the validity of the act expeditiously.
[2] We also disapprove that part of the trial court's reasoning which stated that finding this program unconstitutional would likewise call into question many other existing statewide programs. Identical reasoning was explicitly rejected in City of Tallahassee, 410 So.2d at 490. We also disapprove the trial court's assertion that nothing in Chapter 447 contemplates allowing local employees to bargain over statewide standards. Not only is this a specious argument not advocated by the petitioners, it implies that the provisions of Chapter 447 are coterminous with the rights guaranteed by article I, section 6. While legislative enactments regulating the bargaining process are accorded "considerable deference," Ryan, 225 So.2d at 906, legislative action via Chapter 447 does not necessarily define the parameters of article I, section 6. City of Tallahassee.
[3] Some cases involve disputing the findings of the jurisdiction's counterpart to Florida's Public Employees Relations Commission, while other cases involve distinguishing between mandatory and permissive subjects of collective bargaining. See generally, Annot., 84 A.L.R.3d 242 (1978).
[4] It is evidently this position of petitioners which the respondent and the courts below have mischaracterized as "forcing the legislature to negotiate statewide standards with local employees."