365 So.2d 1073 (1979)
UNITED FACULTY OF FLORIDA, FEA/UNITED, AFT, AFL-CIO, LOCAL 1880, Petitioner,
v.
BOARD OF REGENTS of the State of Florida, Respondent.
No. GG-465.
District Court of Appeal of Florida, First District.
January 9, 1979.
Patricia A. Renovitch, Tallahassee, for petitioner.
Cass Vickers, of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, for respondent.
*1074 BOYER, Judge.
By petition for review which was filed July 27, 1971 the petitioner (which will sometimes be referred to as UFF) requests this court to hold that the respondent (which will sometimes be referred to as BOR) departed from the essential requirements of law by its refusal to allocate certain funds required to meet its negotiated commitments contained in a certain collective bargaining agreement between the parties.[1]
The UFF is the certified bargaining agent which represents approximately 5,000 faculty and professional employees of the BOR. In October of 1976 the parties executed a two-year collective bargaining agreement pursuant to the requirements of Chapter 447, Florida Statutes. The agreement contained a clause which permitted the parties to negotiate certain monetary items for the 1977-78 portion of the two-year contract. In the fall of 1976 the parties entered into negotiations on the monetary items covered by the re-opener clause. Being unable to reach an agreement, the parties caused to be conducted an impasse hearing before a special master. The special master issued his recommended order to settle the impasse in March of 1977. Subsequent negotiations between the parties relative to the recommended order of the special master pursuant to F.S. 447.403 appearing unsuccessful, the parties informed the Public Employees Relation Commission (PERC) of their inability to reach an agreement. Legislative hearings as contemplated by the statute were thereupon scheduled. However, on or about April 20, 1977, following intensive negotiations, but before the legislative hearings were held, the parties rendered a tentative agreement which was subsequently ratified on May 17, 1977. Thereafter, on June 16, 1977, at a special session of the Florida legislature, the 1977-78 General Appropriations Act was passed.[2] The act explicitly provides that "The agreement negotiated by the Board of Regents and the United Faculty of Florida and ratified on May 17, 1977, shall be administered by the Board of Regents."
Petitioner contends that sufficient monies were appropriated in the several line items of the Appropriation Act to allow implementation of the collective bargaining agreement between the parties. Respondent argues, on the otherhand, that the legislature spoke clearly and unambiguously in the Appropriations Act as to the funds appropriated for implementation of the contract; that insufficient funds were appropriated for that purpose and that respondent is without authority to expend monies incident to the contract other than those specifically so appropriated.
Article VII, Section 1(c) of the Florida Constitution dictates that "[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law." That provision, and the vesting of "the legislative powers of the state" in the Florida Legislature by Article III, Section 1, renders the appropriation of State funds the exclusive constitutional prerogative of the Legislature. The formulation of budget requests and the approval or veto of specific appropriations are the prerogative of the executive branch. (Article IV, Section 1(c) and Article III, Section 8, Florida Constitution.) The executive is also admonished to observe that division of governmental budgetary responsibilities by the law dealing with State appropriations, Chapter 216, Florida Statutes 1975.[3]
*1075 The respondent is required to present "to the Governor, as chief budget officer of the State, all requests for appropriations [for the State University System], in the manner provided in Section 216.023." (Section 240.042(2)(e), Florida Statutes 1975.) All agency budget requests must be submitted by November 1 each year. (Section 216.023, Florida Statutes 1975) The Governor thereafter furnishes "each Senator and Representative a copy of the recommended budget for each state agency" at least 30 days in advance of the legislative session. (Section 216.162(1), Florida Statutes 1975) The Governor's recommended budget is required to include "[a] summary statement of the estimated revenues and the amount of appropriations requested by each state agency and as recommended by him." (Section 216.162(2)(d), Florida Statutes 1975)
Section 216.172, Florida Statutes 1975, details the consideration of agency budget requests by the appropriations committees of the House and Senate, and Section 216.181(1), requires that:
"On or before July 1, the chairmen of the legislative appropriations committees shall jointly furnish information to the department [of Administration] and the Auditor General relative to legislative amendments, if any, to budgets submitted pursuant to Section 216.023 [and 216.162.] The department shall furnish such information to each affected state agency."
It is against the foregoing backdrop that Chapter 447, Part II, Florida Statutes 1975, implements the Article I, Section 6 guarantee of collective bargaining to public employees. Section 447.301(2) assures public employees the right, through a certified bargaining agent, to negotiate collectively with their public employer. For the employees represented by the petitioner herein, the respondent BOR is designated the public employer. (Section 447.203(2), Florida Statutes 1975) If and when the negotiations between the public employer and the bargaining agent produce an agreement, the chief executive officer of the public employer must, pursuant to Section 447.309(2), in his annual budget request or by other appropriate means, request the legislative body to appropriate such amounts as shall be sufficient to fund the provisions of the collective bargaining agreement. The "legislative body" is defined to mean "the State Legislature ... or the governing body of an instrumentality or unit of government having authority to appropriate funds... ." (Section 447.203(10), Florida Statutes 1975) The Florida Legislature is thus the "legislative body" for the public employees represented by the petitioner.
Should negotiations result in an impasse, a mediator may be called in to assist and in the absence of resolution in that manner, special master proceedings are instituted. (Section 447.403, Florida Statutes 1975) If the special master's recommendations for settlement of the contract talks are rejected by either party, the matter is referred to the legislative body for final disposition. The public employer must, and the bargaining agent may, submit its recommendations for impasse resolution to the legislative body, and the legislative body thereafter takes "such action as it deems to be in the public interest, including the interest of the public employees involved." (Section 447.403(1)(c)(4), Florida Statutes 1975) Similarly, when negotiations yield agreement and the chief executive officer requests the funds therefor, the legislative body may appropriate less than the amount requested.[4]
*1076 It was within the framework of the foregoing constitutional and statutory measures that the respondent and the petitioner entered negotiations for salary increases and other terms and conditions of employment covering faculty members and other professional employees during the 1977-78 fiscal year.
The special master above referred to, summarized the basis upon which the parties had encountered an impasse over salary increases as follows:
"UFF asks for faculty salary increases aggregating $18.7 million for (1) across-the-board increases, (2) discretionary funds for increases, and (3) for implementing a program of minimum salaries ... [representing] a 22% increase in compensation.
"BOR recommends a 3% across-the-board increase [and] recommends additionally 3.35% of the bargaining unit payroll to be distributed to faculty on the basis of management discretion ..."
Thus the parties stood at the time the Governor's budget recommendations fell due under F.S. 216.162(1). The petitioner's last best offer was a demand for a 22% salary hike, the respondent's a counteroffer of 6.35%. Accordingly, the budget recommendation which went forward at that time requested salary increase funds for the Board of Regent's collective bargaining unit "equal to 6.35% of the currently approved annual salary rate" of which 3% was, as offered at the bargaining table, "for across-the-board adjustments". In dollar terms the request was for $6,647,905.
The special master's report went to PERC and the parties on or about March 9, 1977, subsequent to the submission of the Governor's recommended budget. With respect to salaries the special master recommended an 8.85% increase in bargaining unit pay, 5.5% to be across-the-board, the remaining 3.35% to be discretionary funds. On March 28, 1977, the respondent herein accepted in part and rejected in part the special master's recommendations. With reference to salaries, it accepted his recommendation for an 8.85% increase, but rejected his proposed division between the across-the-board and discretionary pay components thereof. In accordance with Section 447.403(2)(c)(1), Florida Statutes 1975, the respondent prepared its recommendations for settling the dispute and transmitted them and the special master's report to the Legislature. On the eve of the legislative hearings which had been scheduled to resolve the impasse as above recited, an agreement was reached, the salary increase element of which called for funding at the 8.85% level.
In fulfillment of the responsibilities imposed by Section 447.309(2), Florida Statutes 1975, the official budget request was amended on April 29, 1977, to accommodate the parties' recent agreement. As the amended request explains, the collective bargaining agreement specified a salary increase effective date of September 1 for 12-month personnel and academic year employees other than those whose 1977-78 assignment commenced during the summer quarter. The earlier budget request for a 6.35% increase was calculated by reference to a July 1 effective date. Using the September 1 date agreed to provided a 7.61% average salary increase without additional dollar cost that year, although an increase in the requested rate was necessary, the next year's salary base would be augmented. The request further indicated that the balance of the funds necessary for an 8.85% increase could be generated by salary savings, hiring for vacant positions at approximately 20% below recommended average *1077 salaries, then estimated to yield roughly $1.4 million Systemwide.[5]
The Legislature did not provide the approximately $6.6 million sought, but instead appropriated only $5,096,591. That item, (Item 14 of the Appropriations Act) is expressly denominated for "CBU [collective bargaining unit]  Pay Increases for Implementation of Contracts  Pay Adjustment and Merit Increases  Board of Regents Unit". The accompanying letter of intent, which is required by Section 216.181(1), Florida Statutes 1975, limits the source of unit salary increases to Items 14, 394 (base salary), 405 (EIES)[6] and 413 (USF Medical Center)[7] and proscribes total increases exceeding "7.1% of the June 30, 1977, rate for all continuing unit employees". Similar restrictions are placed upon salary increases outside the bargaining unit. The $5.1 million appropriation accounts for roughly 5.9% of the 7.1%, the remainder being the unit salary savings above mentioned.
It is clear then that the Legislature underfunded the collective bargaining agreement between the petitioner and the respondent. Faced with a request for a $6.6 million appropriation, the Legislature chose to appropriate but $5.1 million. Both the budget request and the appropriation handed down explicitly and unmistakably identified the amounts having to do with the parties' collective bargaining agreement. There appears neither error not misunderstanding. The letter of intent, which was prepared in accordance with legislative mandate[8] merely corroborates what is otherwise clear: That less than the requested amount was appropriated.
The petitioner attempts to avoid that conclusion by asserting that the letter of intent is not binding upon the respondent. That proposition is contradicted by the very terms of F.S. 216.181(1), which mandates its joint preparation by the chairmen of the House and Senate appropriations committees. It is, therefore, by virtue of that statutory provision, an element of the annual appropriations bill. By legislative fiat it enjoys the force and effect of law until such time as the members of the Legislature determine to revoke that delegation to their appropriations committee chairmen.
Further, assuming arguendo that the letter of intent is not dispositive, it is nonetheless entitled to substantial weight in ascertaining the Legislature's will. That is so for precisely the reason that the Legislature has directed its appropriations committee chairmen to issue such letter. Moreover, the budget request presented to the Legislature is to be considered in arriving at any interpretation of an appropriations bill. During the days when such budget requests were submitted to the Legislature by a Budget Commission, the Florida Supreme Court in State ex rel. Knott v. Lee, 144 Fla. 164, 197 So. 681 (1940), explained their significance:
"The Budget Commission was created by Chapter 8426, Acts of 1921, and its recommendation is a very important element in every appropriation bill; in fact its recommendation and report is a guide to the legislature in making appropriations for all departments of the State Government. The General Appropriation Bill passed by each session of the legislature is predicated on the report of the Budget Commission." (197 So. at page 681)
A similar ruling appears in State ex rel. Goodjohn v. Lee, 148 Fla. 719, 5 So.2d 595 (1941), wherein our Supreme Court stated:
"Under the above quoted statute the requests of a State department for appropriations to cover salaries in the department with the recommendation of the *1078 Budget Commission as to amounts to be appropriated for such salaries are officially before the legislature not to control legislative action but as authorized information as to the salaries requested for the department and officially recommended by the Budget Commission consisting of the Governor and the six State Administrative Officers; and when the appropriation made by statute is of a total sum to cover all salaries of the Department, the official records as to what amounts for different salaries were requested and recommended and are included in the appropriations, may be considered. * * *" (5 So.2d at page 598)
Petitioner contends that the respondent has been given sufficient funds to provide the agreed 8.85% pay raises, but refuses, without reason, to do so. We cannot agree. The Legislature did not appropriate an indeterminable sum of money to the respondent for expenditure upon the collective bargaining agreement as the respondent saw fit. Rather it appropriated a specific dollar amount for that purpose and no more. In the face of an unambiguous request for a $6.6 million appropriation for bargaining unit salary increases, the Legislature appropriated $5.1 million toward that end. Had the Legislature intended to authorize or permit the expenditure of $6.6 million within the bargaining unit, it could have returned an appropriation in that amount. Had the Legislature intended to provide an 8.85% salary increase for members of the bargaining unit, it would not have imposed the 7.1% ceiling thereon. For the respondent to attempt to allocate at the 8.85% level, despite those restrictions, would be to act in blatant disregard of legislative strictures clearly articulated by the Appropriations Act and the letter of intent. The subject appropriations act is susceptible of no interpretation other than that less than the amount requested for the collective bargaining agreement was appropriated. It is, then, the appropriation of less than the amount requested for unit salary increases which precludes the respondent from doing otherwise.
Petitioner lays great stress on the fact that the Appropriations Act contains no direct prohibition against the use of other appropriated funds for funding the subject contract. The absence, however, of such a prohibition cannot, particularly in light of the other specific provisions of the Act as above mentioned, be construed as a license for the BOR to spend such funds in such manner as it may desire, regardless of the express wording of the several appropriated items contained in the Act.
Even if the salary increase funds within the respondent's jurisdiction were entrusted to it free of all legislative restrictions, the petitioner's argument would be flawed. For a ruling that each and every collective bargaining agreement is entitled to its allocation "off the top" of the employer's aggregate appropriations would inevitably bring at least two such agreements into irremediable collision.
Nor may the Legislature's failure to fund the agreement at the level requested by the public employer be construed as an impairment of contract obligations proscribed by Article I, Section 10 of the Florida Constitution. The collective bargaining agreement was negotiated within the existing legal framework. Among the controlling laws was F.S. 447.309(2), by which the Legislature explicitly reserved the right to appropriate "less than the amount requested" to fund the agreement. That statute operates to make all collective bargaining agreements subject to the approval, through the medium of appropriations, of the legislative body. That the Legislature might not provide full funding for the collective bargaining agreement was a contingency well known to the parties before, during and after negotiations. The agreement was entered into with full knowledge and in contemplation of the Legislature's appropriative prerogatives vis-a-vis the negotiated product. The agreement embodied the contingency of underfunding just as surely as if it had been expressly recited therein.
The collective bargaining agreement to which the petitioner is a party did not divest *1079 the Legislature of its constitutional powers in the appropriation of public monies. It did not reconstitute the exercise of legislative discretion a simple ministerial function. The agreement subsumed the Legislature's appropriations authority. It depended, as the parties knew full well from the outset, upon an appropriation in the amount requested, failing which the agreement was to be administered within the appropriation made. (F.S. 447.309(2)) The respondent was required to request monies from the Legislature sufficient to fund the agreement in full. It did precisely that, but its efforts before the 1977 Legislature were only partially successful.
In short, the collective bargaining agreement in question incorporated the Constitution and laws of this State, the provisions of which commit to the Florida Legislature the final say in the appropriation of State monies. That reservation of powers was a part of the agreement. The petitioner was expressly put on notice thereof by the terms of F.S. 447.309(2).
Our disposition of the primary points as above provided renders it unnecessary for us to address the other issues argued in the briefs.
We find no departure from the essential requirements of law. The petition for review is denied and the position taken by respondent is
AFFIRMED.
McCORD, C.J., and MILLS, J., concur.
NOTES
[1] In its brief UFF phrases the "question presented" as follows:

"Did the BOR depart from the essential requirements of law by its refusal to allocate the funds required to meet its negotiated commitments contained in the UFF-BOR ratified collective bargaining agreement?"
Unfortunately, this court's review is hampered by the failure of the parties to consistently phrase and then in turn argue identifiable points of law. Please see American Baseball Cap, Inc. v. Duzinski, 308 So.2d 639 (Fla. 1st DCA 1975).
[2] Chapter 77-465, Laws of Florida.
[3] Section 216.181(4), Florida Statutes 1975 requires that "Each state agency shall develop the internal management procedures and budgets necessary to assure compliance with the approved budget." And Section 216.192(1), Florida Statutes 1975 specifies that "[t]he Comptroller shall authorize all expenditures to be made from the appropriations on the basis of such releases and in accordance with the approved budget and not otherwise. Expenditures shall be authorized only in accordance with legislative authorizations." See also Article IV, Sections 4(d) and (e) of the Florida Constitution, respecting the duties of the Comptroller and the Treasurer in fiscal matters and the disbursement of State monies.
[4] F.S. 447.309(2), Florida Statutes 1975, provides:

"Upon execution of the collective bargaining agreement, the chief executive shall, in his annual budget request or by other appropriate means, request the legislative body to appropriate such amounts as shall be sufficient to fund the provisions of the collective bargaining agreement. If less than the requested amount is appropriated, the collective bargaining agreement shall be administered by the chief executive officer on the basis of the amounts appropriated by the legislative body. The failure of the legislative body to appropriate funds sufficient to fund the collective bargaining agreement shall not constitute, or be evidence of, any unfair labor practice."
[5] It should be pointed out that since the salary savings dollars associated with the bargaining unit were not a direct appropriation, the 1977 Appropriations Act is without consequence for those funds.
[6] Engineering faculty and University of South Florida Medical Center personnel paid from these two line items are included in the petitioner's bargaining unit.
[7] Ibid.
[8] F.S. 216.181(1).