PER CURIAM.
This is an administrative appeal of an order holding that the School Board of Martin County committed an unfair labor practice in freezing teachers’ salaries in 1991 without negotiating with the teachers’ representative, the Martin County Education Association. We reverse.
FACTS
The School Board and the Association entered into a collective bargaining agree *522 ment for a three year period ending on July 30, 1993. The agreement contains provisions for teacher salaries and other employment issues. The agreement also contains a “reopener” clause which provides that, notwithstanding the salary provisions set out therein, “salaries are subject to negotiations for July 1, 1991 and July 1, 1992 years.” Per this clause, on May 30, 1991, the Association notified the superintendent of schools of its intention to reopen the issue of salaries, and negotiations were requested to begin in June 1991. Negotiations were ultimately scheduled to begin on July 3, 1991. The parties continued to bargain over salaries and other reopener issues until August 16,1991, when the superintendent declared an impasse.
On June 18, 1991, the School Board held a budget meeting, and the Board, acting in its legislative capacity, voted to freeze teachers’ salaries at the previous year’s levels due to an anticipated shortfall in revenue. Since 1982, the teachers had been given an annual salary increase based on experience. This wage increase was eliminated by the freeze. Subsequently, the Association filed this action claiming the unilateral elimination of the salary increase constituted an unfair labor practice. After a public hearing, the Public Employees’ Relations Commission entered a final order on January 17, 1992, finding that the School Board had committed an unfair labor practice and violated section 447.-501(l)(a) and (c), Florida Statutes (1991), by unilaterally rescinding experienced based step salary increases while the parties were negotiating salaries pursuant to the “reo-pener” clause in the current agreement. In relevant part, the Commission’s order stated:
The contract was effective throughout its terms on all subjects covered therein which were not reopened for negotiations. However, ... salaries and other specified articles were subject to reopen-er negotiation upon proper notice. The undisputed facts demonstrate that negotiations on salaries were properly reopened and the parties were so engaged when the non-funding occurred. Thus, under this factual scenario, for the reasons explained below, the Commission agrees ... that no agreement existed on the subject of wages and, consequently, the underfunding of wages was not authorized by Section 447.903(2).
The Commission ordered the School Board to make a retroactive payment of the step salary increases, plus interest.
LAW
A unilateral underfunding of a collective bargaining agreement is a per se violation of section 447.501(l)(a) and (c), in the absence of waiver, exigent circumstances, or legislative resolution of an impasse. FFUAPD v. State of Florida, 16 FPER 21115 (1990); Palowitch v. Orange County School Bd., 3 FPER 280 (1977), affirmed, 367 So.2d 730 (Fla. 4th DCA 1979). In regard to the exception by legislative resolution of impasse, section 447.-309(2), Florida Statutes (1991), provides:
[U]pon execution of the collective bargaining agreement, the chief executive shall, in his annual budget request or by other appropriate means, request the legislative body to appropriate such amounts as shall be sufficient to fund the provisions of the collective bargaining agreement. If less than the requested amount is appropriated, the collective bargaining agreement shall be administered by the chief executive officer on the basis of the amounts appropriated by the legislative body. The failure of the legislative body to appropriate funds sufficient to fund the collective bargaining agreement shall not constitute, or be evidence of, any unfair labor practice.
(Emphasis added). This appeal turns on whether the “collective bargaining agreement” referred to in section 447.309(2) refers to the general contract governing the parties, or to the specific provision on wages as the Commission concluded. The Commission held there was no existing collective bargaining agreement on wages, since the parties were actively negotiating on that issue,under the “reopener” provision referred to above.
*523 The terms of section 447.309(2) are unambiguous. After a collective bargaining agreement is negotiated and concluded in good faith, section 447.309(2) prevents any subsequent legislative underfunding from being used, as evidence of an unfair labor practice against the public employer. This statute makes no exception for the situation involved herein where the public employer wears two hats, one as the public employer, and the other as the legislative body.
Despite the absence of a precise definition of “collective bargaining agreement” in chapter 447, section 447.309(5) does provide the basic characteristics of a “collective bargaining agreement”:
Any collective bargaining agreement shall not provide for a term of existence of more than 3 years and shall contain all of the terms and conditions of employment of the employees in the bargaining unit ... except those terms and conditions provided for in applicable merit and civil service rules and regulations.
By both a plain reading of section 447.-309(2), and a consideration of section 447.-309(5), it appears that “collective bargaining agreement” as used in section 447.309 refers to the entire existing agreement between the parties.
CONCLUSION
We conclude that the plain meaning of section 447.309(2) requires reversal. The benefit of section 447.309(2) to a public employer is triggered by the execution of the collective bargaining agreement which in our case occurred well before the reopened negotiations on wages and the subsequent legislative underfunding. We hold a reopen provision, contained in an existing collective bargaining agreement, and negotiations begun pursuant thereto, do not remove the protection of section 447.309(2) for the School Board with respect to the salary provisions of the agreement. While we are ordinarily constrained to give great deference to the Commission’s interpretation of this statutory scheme, we cannot go so far as to override the clear language used by the legislature. Cf. State v. Florida Police Benevolent Ass’n, Inc., et al., 613 So.2d 415 (1992).
Accordingly, we reverse the decision of the Commission and remand for further proceedings consistent herewith.
ANSTEAD and DELL JJ., and WALDEN, JAMES H., Senior Judge, concur.