614 So.2d 1143 (1993)
SARASOTA COUNTY SCHOOL DISTRICT, Appellant,
v.
SARASOTA CLASSIFIED/TEACHERS ASSOCIATION and the Public Employees Relations Commission, Appellees.
No. 92-01101.
District Court of Appeal of Florida, Second District.
February 12, 1993.
Rehearing Denied March 16, 1993.
*1144 A. Lamar Matthews, Jr., Jeanne S. Medawar, and Arthur S. Hardy of Matthews, Hutton & Eastmoore, P.A., Sarasota, for appellant.
Thomas W. Young III, Gen. Counsel, FEA/United, Tallahassee, for appellee Sarasota Classified/Teachers Ass'n.
Suzanne M. Choppin, Staff Counsel, and Stephen Meck, Deputy Gen. Counsel, Tallahassee, for appellee Public Employees Relation Com'n.
Pamela L. Cooper, Gen. Counsel, Tallahassee, for amicus curiae, Fla. Teaching Profession-National Educ. Ass'n.
John D. Carlson, Gatlin, Woods, Carlson & Cowdery, Tallahassee, for amicus curiae, Fla. Ass'n. of Dist. School Superintendents, Inc.
SCHOONOVER, Judge.
The Sarasota County School Board (school board) challenges a decision of the State of Florida Public Employees Relations Commission (PERC). The decision held that the school board committed an unfair labor practice within the meaning of section 447.501(1)(a) and (c), Florida Statutes (1989), by unilaterally discontinuing the payment of step pay increases to employees during the pendency of negotiations between the school board and Sarasota Classified/Teachers Association (CTA). We reverse.
The Sarasota County School Board is a public employer within the meaning of section 447.203(2), Florida Statutes (1989). It is also a legislative body as defined by section 447.203(10), Florida Statutes (1989). The Sarasota Classified/Teachers Association is an employee organization within the meaning of section 447.203(11), Florida Statutes (1989), and is, and has been for many years, the certified bargaining agent for the school board's classified and instructional employees' bargaining units.
In 1988, the school board and CTA negotiated two collective bargaining agreements, one dealing with instructional employees of the school board and the other dealing with classified employees. The agreements which ran from July 1, 1988, through June 30, 1991, contained, as had past agreements, provisions for step pay increases each year. Although the agreements had expired and new ones had not been negotiated, those employees eligible for step increases on July 1, 1991, received the increases. During the month of July 1991, the superintendent submitted a proposed budget for the 1991-1992 school year to the school board. The proposed budget included sufficient funds to allow the payment of step increases to all qualified employees. *1145 The school board, however, rejected this budget and instead approved a tentative budget which appropriated approximately seven million dollars less than was required to fully fund salaries and benefits. The tentative budget was finally adopted after CTA filed its unfair labor charge when the step increases were discontinued based upon the tentative budget.
The superintendent notified everyone concerned that because the school board had underfunded the budget, the 1990-1991 salary schedule would remain in effect. This action resulted in the loss of step increases to all employees entitled to them by agreement. The superintendent offered to bargain the impact of the underfunding as it related to his plans for administering the agreements but he did not agree to bargain the amount of money the school board had appropriated.
On August 7, 1991, the CTA filed an unfair labor practice charge with PERC. According to the charge, the school board committed an unfair labor practice within the meaning of section 447.501(1)(a) and (c), Florida Statutes (1989), by unilaterally discontinuing the payment of step increases during the pendency of negotiations between the parties. CTA contended that the payment of salary step increases during the pendency of negotiations had become an established past practice in Sarasota County.
In response to the charge, the school board admitted that it tentatively approved a budget for the 1991-1992 school year which did not appropriate a sufficient amount of money to fully fund its two collective bargaining agreements and that the superintendent had discontinued payment of step increases to all school board employees. The school board also admitted that the parties were involved in negotiating new collective bargaining agreements.
As affirmative defenses to the charge the school board claimed section 447.309(2), Florida Statutes (1989), gave the school board authority to fail to appropriate funds sufficient to fund the agreements and that the statute provides that such an action shall not constitute, or be evidence of, an unfair labor practice. The school board then explained that the superintendent proposed a budget which fully funded the agreements. The school board, facing a fifteen million dollar deficit for the school year, did not adopt the superintendent's proposed budget but instead amended it and, in doing so, tentatively adopted a budget which failed to fully fund the agreements. The superintendent gave the union ample opportunity to engage in meaningful negotiations over the effect of the school board's decision.
During the course of the hearing on the charge, the parties stipulated that the school board was in a difficult financial position at the time the budget was being considered. Evidence presented at the hearing established that although new contracts had not been negotiated, union dues were still being collected, and that sick leave, health benefits, vacations, and other benefits were being paid pursuant to the expired contract.
At the conclusion of the hearing, the hearing officer entered a detailed recommended order concerning the issue of whether the school district had committed an unfair labor practice by discontinuing step pay increases to employees.
The hearing officer found that every year for at least the preceding twelve years employees who attained a higher step during the year had their salaries increased on July 1. The step increases have been a part of every collective bargaining agreement ratified by these parties. Each of these contracts expired and in every instance a new contract was not ratified until after the summer. In each instance, the district paid the step increases effective on July 1 notwithstanding the lack of a ratified successor contract. Based on those findings, the hearing officer found that because of the long-standing practice of continuing to pay the step increments, the employees had a reasonable expectation that they would receive the step increase on July 1, 1991.
The hearing officer found that the school board had not established the defense of waiver or shown that it had properly underfunded *1146 the budget pursuant to section 447.309(2) and then held that exigent circumstances, although not pled, required immediate action. He stated that a school board as a district's elected legislative body was not free to disregard the district's bargaining obligations. However, in adopting a budget, the school board must make a good faith effort to balance its books. There was no proof or allegation that the school board's action here was a ruse for unlawful activity. Accordingly, the school board's budgetary decision was presumed to be based on a good reason, i.e. an imminent decrease in state support. The school board made a unilateral change because of an urgent need to control costs that were beyond anticipated revenues. The hearing officer found that this decision could and should be addressed in the ongoing bargaining process. However, under the narrow circumstances of this case, it was not an unfair labor practice. The hearing officer's order, accordingly, determined that the school board did not commit an unfair practice.
PERC adopted the hearing officer's findings of fact and agreed that the school board had not established a waiver, but disagreed with his holding that the board had pled and proved exigent circumstances.
PERC also rejected the school board's contention that it had acted properly pursuant to section 447.309(2). In discussing the school board's contention, PERC stated that section 447.309(2) allows a public employer to unilaterally alter terms and conditions of employment, thereby avoiding its section 447.309(1) bargaining obligation. Because section 447.309(2) impairs the right of employees to bargain collectively, guaranteed by Article I, section 6, Florida Constitution, the statute must be accorded a strict construction. A literal reading of the section reveals that it is applicable when a collective bargaining agreement has been underfunded by the legislative body. Since the provision refers specifically and repeatedly to the administration of a collective bargaining agreement, a strict and literal construction of the provision holds that it is applicable only when there is a bargaining agreement in effect. The commission concluded that the section is inapplicable to an employer's action during a hiatus and, therefore, cannot shield the school board from liability for unilaterally terminating the step increases.
Based upon its interpretation of section 447.309(2), PERC entered an order finding that the school board violated section 447.501(1)(a) and (c) by unilaterally discontinuing salary step increments during the hiatus between collective bargaining agreements. This timely appeal followed.
We disagree with PERC's holding that section 447.309(2) is not applicable in this case because the bargaining agreements had expired and the parties were negotiating new ones. We recognize that it is well established that an interpretation of a statute by an agency charged with its administration is entitled to great weight and will not be overturned unless clearly erroneous, State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973). In this case, however, we find that PERC's interpretation of the statute is erroneous. We conclude that the statute applies whenever a legislative body, such as the school board in this case, is requested to appropriate public funds to satisfy an obligation which arises out of collective bargaining. If we were to accept the agency's interpretation of section 447.309(2), a public employee would have a right he did not bargain for, i.e. an unconditional right to receive funding, and this right would be in violation of the Florida Constitution which prohibits expenditures except in pursuance of appropriations made by law. Art. VII, § 1(c), Fla. Const.
It is well established that public employees have the right to collectively bargain. Art. I, § 6, Fla. Const. See Dade County Classroom Teachers' Ass'n v. Ryan, 225 So.2d 903 (Fla. 1969). Chapter 447, Part II, Florida Statutes (1989), implements this right and sets forth the procedures to be followed in bargaining.
As mentioned above, the school board is a public employer pursuant to section 447.203(2) and it is also a legislative body under section 447.203(10). CTA is an employee *1147 organization within the meaning of section 447.203(11) and is the certified bargaining agent for the school board's classified and instructional employees' bargaining units. After CTA and the school board, as a public employer, negotiated the agreements which contained the step increases that are the subject matter of this action, the superintendent, as chief executive officer of the school board, requested the board, as a legislative body, to appropriate sufficient funds to fully implement the agreements. This request which was made pursuant to section 447.309(2) was approved and the agreements were fully funded for the initial year. In preparing and submitting his annual budget requests for the next two years of the agreement, the superintendent, also pursuant to section 447.309(2), requested sufficient funds to maintain the agreements. The school board approved those budget requests.
Since the agreements were fully funded during the three year period, barring any exceptional circumstances such as exigent circumstances or waiver, an unfair labor practice would have been committed if the school board had unilaterally discontinued step increases. It would also have been an unfair labor practice if the step increases had been discontinued during any reopener of the agreements for the purpose of renegotiating wages or salaries. Escambia Education Ass'n, FTP-NEA v. School Board of Escambia County, 10 FPER 15160 (1984); Nassau Teachers Ass'n, FTP-NEA v. School Board of Nassau County, 8 FPER 13206 (1982).
The contracts between the parties in this case had expired, however, before step increase were discontinued. It is, therefore, necessary for us to determine if the unilateral act of discontinuing the increases after the agreements expired and during negotiations was an unfair labor practice. If we were not considering the school board as a legislative body underfunding these increases, we would find an unfair labor practice.
Generally, under contract law, parties to an agreement are relieved of their mutual obligations upon termination of an agreement. N.L.R.B. v. Cone Mills Corp., 373 F.2d 595 (4th Cir.1967). Where, however, an employee continues to work after a contract expires, a rebuttable presumption arises that the employment is continued under the terms of the original contract. Zimmer v. Pony Express Courier Corp., 408 So.2d 595 (Fla. 2d DCA 1981), rev. denied, 418 So.2d 1280 (Fla. 1982). A collective bargaining agreement is not, of course, an ordinary contract. Parties to a collective bargaining agreement normally contemplate a subsisting relationship of indefinite duration with frequent renewals. Since the relationship generally continues beyond expiration of an agreement, some rights survive the termination, and there is more reason to apply a presumption that the employment is continued under the terms of the last contract. Zimmer.
It is of course necessary to determine if the right to step increases survived the expiration of the agreements in this case. It is well established that unilateral changes in working conditions are prohibited during negotiations. Palowitch v. Orange County School Board, 3 FPER 280 (1977), aff'd, 367 So.2d 730 (Fla. 4th DCA 1979). A public employer cannot unilaterally alter the wages, hours, and other terms and conditions of employment of employees covered under a collective bargaining agreement until impasse is reached and the employer as the legislative body takes action as provided under section 447.403(4)(d), Florida Statutes (1989). Palowitch. Upon the expiration of an agreement and until the legislative body takes action pursuant to section 447.403(4)(d) or a new agreement is ratified, the public employer has a duty to maintain the status quo with regard to the expired agreement. See Hinson v. N.L.R.B., 428 F.2d 133 (8th Cir.1970). This status quo requires the employer to maintain the terms and conditions of the expired agreement in the same state the terms existed on the expiration date of the agreement. To the extent of this straight line maintenance, the agreement remains alive in spite of its expiration date. Pinellas County Police Benevolent Ass'n v. City of St. Petersburg, 3 FPER 205 (1977). Furthermore, where a long practice *1148 of paying incremental or step wage increases has been continued in bargaining agreements, and during past periods of negotiations after contracts have expired, employees may reasonably expect that they will continue and they become part of the status quo. See Nassau Teachers Ass'n, FTP-NEA v. School Board of Nassau County, 8 FPER 13206 (1982); Hendry County Education Ass'n v. School Board of Hendry County, 9 FPER 14059 (1982).
Accordingly, if the school board, as the legislative body of the employer, had accepted the superintendent's proposed budget submitted for the 1991-1992 school year, it would also have been, absent exceptional circumstances, an unfair labor practice to have unilaterally discontinued the step increases after the agreements had expired by their own terms and while the parties were negotiating new agreements. City of Ocala v. Marion County Police Benevolent Ass'n, 392 So.2d 26 (Fla. 1st DCA 1980). See also Pasco CTA v. School Board of Pasco County, 3 FPER 9 (1976), aff'd, 353 So.2d 108 (Fla. 1st DCA 1977); Escambia Education Ass'n v. School Board of Escambia County, 10 FPER 15160 (1984); Nassau Teachers Ass'n, FTP-NEA v. School Board of Nassau County, 8 FPER 13206 (1982).
Unfortunately for the employees who deserve (and if they were in the private sector would be entitled to) step increases, the school board as a legislative body also had and retained the right and obligation to properly appropriate funds for the operation of the school district.
A public employee's constitutional right to bargain collectively is not and cannot be coextensive with a private employee's right to bargain collectively. Certain limitations on the former's right are necessarily involved. For instance, a wage agreement with a public employer is obviously subject to necessary public funding. This necessarily involves the powers, duties, and discretion vested in those public officials responsible for the budgetary and fiscal processes inherent in government. Pinellas County Police Benevolent Ass'n v. Hillsborough County Aviation Authority, 347 So.2d 801 (Fla. 2d DCA 1977).
As discussed herein above we would hold it to be an unfair labor practice if the school board had unilaterally discontinued step increases at any time funded agreements were in effect. We would not, however, hold it to be an unfair labor practice if the school board, before ratifying the agreements, or in adopting its annual budgets, had not fully funded the agreements. § 447.309(2); United Faculty v. Board of Regents, 365 So.2d 1073 (Fla. 1st DCA 1979). See also Holmes County Teachers Ass'n v. The School Board of Holmes County, 9 FPER 14207 (1983).
Although public employees have the right to collectively bargain under the Florida Constitution, and the courts have been vigilant in upholding this right, it must be recognized that public bargaining is not the same as private bargaining. State of Florida v. Florida Police Benevolent Ass'n, 613 So.2d 415 (Fla. 1992). Under the separation of powers doctrine, the right to bargain must be considered along with Article VII, section 1(c) of the Florida Constitution, which provides that "no money shall be drawn from the treasury except in pursuance of appropriation made by law." Accordingly, even though school board employees have the right to bargain with their employer, the school board in its capacity as the legislative body has the absolute right and obligation under the constitution to fund or not fund any agreement entered into between the employees and the school board as their employer. The legislature clearly reserved this right when it enacted section 447.309(2) and made it clear that underfunding an agreement was not an unfair labor practice. Any other rule would permit the executive branch of government, by entering into collective bargaining agreements calling for additional appropriations, to invade the legislative branch's exclusive right to appropriate funds. Florida Police Benevolent Ass'n.
PERC applied a strict interpretation to section 447.309(2) because it concluded that it impairs the right of employees to bargain collectively as guaranteed by Article I, section 6 of the Florida Constitution. In doing *1149 so, PERC concluded that the section only applied when an agreement was in existence. We disagree with both conclusions. Section 447.309(2) does not impair the right to bargain. The agreements between the parties were negotiated within the existing legal framework which included the section under consideration. That statute makes all collective bargaining agreements subject to the approval, through appropriations, of the legislative body. The agreements by law embodied the contingency of underfunding and could not have divested the school board of its constitutional power to appropriate public moneys. United Faculty. We, accordingly, disagree with PERC's conclusion that the statute must be strictly construed because it impairs the right to bargain collectively. As mentioned above, we also disagree with PERC's conclusion that section 447.309(2) only applies when there is an agreement in existence. We conclude it applies whenever it is necessary to appropriate funds to implement a requirement that arises out of collective bargaining. The appropriation of funds is the absolute right of the legislative body. The school board had this right before it entered into any agreements. Section 447.309(2) reserved this right after the agreements were executed, and it must be construed to reserve the right to underfund any obligation that arises from collective bargaining. Any other construction would result in allowing the executive branch of government to bargain away a legislative body's constitutional right and obligation to appropriate funds.
We, accordingly, hold that the school board did not commit an unfair labor practice in this case. It had the right to underfund the agreements and the superintendent properly offered to negotiate the impact of this underfunding. We, therefore, reverse and remand for proceedings consistent herewith.
Reversed and remanded.
LEHAN, C.J., and FRANK, J., concur.