CRENSHAW, Judge.
The Polk County School District (School District) appeals a final order of the Public Employees Relations Commission (PERC) determining that the School District committed an unfair labor practice and violated sections 447.501(1)(a) and (c), Florida Statutes (2008), by unilaterally changing the terms of and options for employee health insurance coverage for members of the Polk Education Association (PEA). The School District raises four arguments on appeal, two of which we believe merit discussion. Because we hold that competent, substantial evidence supported the PERC’s determination that the PEA did not waive its right to collectively bargain and that there were no exigent circumstances providing an exception to the PEA’s right to collectively bargain, we affirm. We affirm the remainder of the issues raised by the School Board without comment.

Background

The PEA is the certified bargaining agent for teachers, paraeducators, and educational support personnel employed by the School District. Although the PEA simultaneously bargains for all three bargaining units, each bargaining unit has its own collective bargaining agreement with the School District. Each agreement contained identical language requiring the School District to provide “at no cost to full-time employees, a health insurance program ... comparable to the current CCP (Coordinated Care Plan) health in *13 surance program.”[1] The agreement also required the School District to create an insurance committee, known as the Superintendent’s Insurance Committee (SIC),[2] to “study and make recommendations concerning health, life, dental and vision insurance coverage.” Though the collective bargaining agreements for all three bargaining units ended on June 30, 2007, the parties were negotiating successor agreements with the School District in 2009, and the agreements remained in effect for purposes of our review.
Like many municipal and local governments across Florida, the School District incurred significant reductions in state funding during the 2007-2008 and 2008-2009 fiscal years. In January 2009, the Florida Department of Education informed the School District that it could be facing up to a $90 million dollar shortfall for the 2009-2010 fiscal year.[3] Because the School District believed its budgetary crisis was exacerbated by the payments it was making under its employees’ current health insurance plan, the 704 Plan, the SIC began meeting in January 2009 to study and discuss possible modifications. On January 28, 2009, the SIC created a steering committee composed of six SIC members to review the proposed modifications and make recommendations before the SIC. PEA president Marianne Capo-ziello was one of the steering committee’s six members.
On February 11, 2009, the School District’s benefit consultant and a representative of third-party administrator Blue Cross and Blue Shield provided thirteen alternate health insurance plans for the steering committee to consider. After the steering committee narrowed these thirteen options down to three, the SIC ultimately decided on April 29, 2009, to present what was designated the “3160/3161 Plan” to the Polk County School Board (School Board). Though the SIC presented the 3160/3161 Plan to the School Board on May 12, 2009, the School Board did not approve the 3160/3161 Plan until June 23, 2009, because it wanted additional time to evaluate available health insurance options. And when the School Board did approve the 3160/3161 Plan, the plan varied from the earlier plan proposed by the SIC.[4] The School Board also voted on June 23, 2009, to allow employees the option of two additional plans, classified as the “New 704 Plan” and the “Modified 3566 Plan,” both of which required School District employees to pay a monthly premium.[5] Neither *14 of these two plans had been presented to the SIC or the steering committee. As the health plans were to go into effect on October 1, 2009, the open enrollment period for employees to choose their health insurance plan had to occur no later than August 2009.
Because the PEA did not have any direct input in selecting the original thirteen options or deciding on which plan to present to the School Board, Capoziello wrote a letter to the School District’s Director of Employee Relations, José Farinas, on June 4, 2009, requesting that the collective bargaining teams affected by the proposed changes meet as soon as possible to discuss all available options before anything was implemented by the School Board. Farinas responded to Capoziello in a letter dated June 10, 2009, stating that the proposed changes had already been worked out by the SIC, which was partially composed of PEA members. Farinas believed that the changes did not violate any provision of the School District’s existing agreements with the PEA, but recognized that “attempting to submit the details of health insurance coverage to the collective bargaining process [would] only create an insurmountable stalemate, especially when the health insurance market changes so dramatically, swiftly and often.” On June 23, 2009, Capoziello wrote to the School Board’s Superintendent, Dr. Gail McKin-zie, expressing the PEA’s concern about the School Board’s intent to vote on proposed health insurance plans that it had never bargained over and some options that had never even been discussed by the SIC. Dr. McKinzie responded to Capoziello the same day in a brief letter directing her to reference Farinas’ earlier correspondence. As we already discussed, the School Board decided later that day to approve the new health plans despite the PEA’s objections.
On July 23, 2009, the PEA filed an unfair labor practices complaint with the PERC, alleging the School District violated sections 447.501(1)(a) and (c), by unilaterally changing the terms of and options for employee health insurance coverage for its members.[6] After a hearing was conducted, the hearing officer entered a recommended order in favor of the PEA determining, inter alia, that the PEA’s involvement in the SIC and the steering committee did not waive its right to collective bargaining and that the School District failed to prove that there were exigent circumstances permitting it to circumvent collectively bargaining with the PEA. The PERC then entered a final order adopting the hearing officer’s findings of fact and conclusions of law.

Standard of review

Appellate courts typically defer to the administrative agency’s determination “because of its greater knowledge and experience in interpreting the law related to it.” Wise v. Dep’t of Mgmt. Servs., Div. of Ret., 930 So.2d 867, 870 (Fla. 2d DCA 2006); see also Util. Workers Union of Am. v. City of Lakeland, 35 So.3d 1023, 1025 (Fla. 2d DCA 2010). Our review of the PERC’s findings “consists of determining whether competent substantial evidence supports the agency’s findings of fact while legal *15 determinations are reviewed de novo.” Beardslee v. Fla. Elections Comm’n, 962 So.2d 390, 391 (Fla. 5th DCA 2007). Discussion
“Absent a clear and unmistakable waiver by the certified bargaining representative, exigent circumstances requiring immediate action, or legislative action imposed as a result of impasse, a public employer’s unilateral alteration of wages, hours or other terms and conditions of employment of employees represented by a certified bargaining agent constitutes a per se violation of [sections 447.501(1)(a) and (c).” Fla. Sch. for the Deaf & the Blind v. Florida Sch. for the Deaf & the Blind, Teachers United, FTP-NEA, 483 So.2d 58, 59 (Fla. 1st DCA 1986) (emphasis added); see also Sch. Bd. of Martin Cnty. v. Martin Cnty. Educ. Ass’n, 613 So.2d 521, 522 (Fla. 4th DCA 1993) (same). “[F]or inaction to ripen into a ‘clear and unmistakable’ waiver, consideration of all the circumstances must reveal that the [bargaining agent’s] conduct is such that the only reasonable inference is that it has abandoned its rights to negotiate over the noticed change.” Leon Cnty. Police Benevolent Ass’n v. City of Tallahassee, 8 FPER ¶ 13400 (1982), aff'd, 445 So.2d 604 (Fla. 1st DCA 1984).
The School District maintains the PEA waived its right to bargain through inaction because, as a result of the PEA’s member participation in the SIC and the steering committee, the PEA knew of the School District’s proposed health plan changes in January 2009 yet failed to act in a timely manner. And, similar to the argument it advanced below, the School District alleges that the PEA’s involvement in the SIC amounted to collective bargaining and was the best procedure to collectively bargain over the specific terms of the health insurance plans due to the fast-paced nature of the health insurance market.
In this instance, we conclude that the PEA’s participation in the SIC was not intended to be a waiver of the PEA’s right to collectively bargain. Further, two of the health plans — the New 704 Plan and the Modified 3566 Plan — were never discussed by the SIC or steering committee. Thus, the PEA could not have waived its right to collectively bargain over these health plans by participating in the SIC because the plans were enacted as a result of proposals undertaken by the School Board, not the SIC. The record before the PERC established that the PEA requested collective bargaining more than two weeks before the School Board was to vote on the proposed health insurance plans, but the School District rebuffed the request, predicting any collective bargaining would end in a stalemate. Hence, there was competent, substantial evidence to support the PERC’s determination that the PEA did not clearly and unmistakably waive its right to participate in collective bargaining.[7] Moreover, we point out there is nothing under section 447.501(c) absolving the School District of its obligation to collectively bargain over proposed changes in health insurance merely because the subject matter is contentious and complex.[8]
*16 Likewise, we conclude there was competent, substantial evidence to support the PERC’s finding that there were no exigent circumstances to justify the School District’s conduct. The affirmative defense of an exigent circumstance “exists to provide relief to an employer who is forced by an emergency to quickly and immediately modify the wages, hours or terms and conditions of employment of its employees.” Coastal Florida Police Benevolent Ass’n v. Brevard Cnty. Sheriff's Office, 30 FPER ¶ 297 (2004) (citing Sch. Bd. of Indian River Cnty. v. Indian River Cnty. Educ. Ass’n, Local 3617, 373 So.2d 412, 414 (Fla. 4th DCA 1979)). Examples of emergencies that may require immediate action by a public employer include issues of public safety or weather events necessitating changes to working conditions. See Fraternal Order of Police, Miami Lodge 20 v. City of Miami, 609 So.2d 31, 34-35 (Fla.1992); Laborers’ Int’l Union of N. Am. v. Greater Orlando Aviation Auth., 869 So.2d 608, 610 (Fla. 5th DCA 2004); Pasco Cnty. Sch. Bd. v. Fla. Pub. Emps. Relations Comm’n, 353 So.2d 108, 125 (Fla. 1st DCA 1977).
Although the School District contends it needed to act unilaterally to ensure that it had enough time to implement the new health plans before open enrollment in August 2009, the record reflects that it knew of the proposed budget shortfall for the 2009-2010 fiscal year by January 2009 and had incurred budget shortfalls in the two prior fiscal years. Nonetheless, the School District did not vote on the proposed health plans until late June 2009 due in part to delays caused by the School Board, not the PEA. Accordingly, the School District’s budget issues did not amount to an exigent circumstance allowing it to restrict the PEA’s right to collective bargaining because the economic conditions requiring a change in their employees’ health insurance plans were an “ongoing problem rather than an occurrence that required immediate action.” Volusia Cnty. Fire Fighters Ass’n Local 3574, IAFF v. Volu-sia Cnty., 32 FPER ¶ 89 (2006); see also Palm Beach County Police Benevolent Ass’n v. Village of N. Palm Beach, 20 FPER ¶ 25004 (1993) (“The defense of financial exigent circumstances requires much more of a showing than just a financial savings upon switching insurance plans.”); Pensacola Junior Coll. Faculty Ass’n v. Bd. of Trs. of Pensacola Junior Coll, 13 FPER ¶ 18150 (1987) (finding a budgetary shortfall does not constitute an exigent circumstance). Therefore, the PERC correctly found that the School District violated sections 447.501(1)(a) and (c) by failing to collectively bargain with the PEA.
Affirmed.
SILBERMAN, C.J., and LaROSE, J., Concur.

. The CCP was eliminated on October 1, 2003, and replaced by the "704 Plan” administered by Blue Cross and Blue Shield. Though the School District classifies the 704 Plan as "interim,” we note the 704 Plan had been in effect for almost six years before the facts giving rise to this opinion ensued.

. Six members of the PEA belonged to the twenty-eight member SIC, including the PEA President, Marianne Capoziello.

. The School District admits that the estimated shortfall was later reduced to $31 million dollars due to unexpected federal funding.

. The approved 3160/3161 Plan included a $1000 health reimbursement account component, rather than an earlier $500 health reimbursement account proposal. At the PERC hearing, the School Board argued that the 3160/3161 Plan was actually better for employees than the old 704 Plan because the 704 Plan did not have a health reimbursement account. However, the School Board failed to point out that the 3160/3161 Plan increased the individual and family deductibles for in-network providers from $250 and $500 to $1250 and $2500 and increased an individual’s calendar year out-of-pocket maximum for in-network providers from $2500 to $5000. The 3160/3161 Plan also changed the structure of an employee’s co-payments.

. In contrast, the old 704 Plan did not require employees to pay any premium.

. The American Federation of State, County and Municipal Employees (AFSCME), another bargaining unit affected by the School District's health plan decision, filed a similar complaint against the School District out of substantially the same circumstances. The PERC consolidated the PEA and AFSCME complaints for the purpose of the hearing, and the Hearing Officer issued a joint recommended order. The PERC then severed the cases and issued separate Final Orders. The AFSCME proceedings are discussed in School Dist. of Polk County v. Polk County Non-Industrial Employees Union, Local 227, AFSCME, AFL-CIO, 100 So.3d 16 (Fla. 2d DCA 2011).

. Though the collective bargaining agreements among the PEA’s bargaining units and the School District ended in June 2007, the parties were still required to adhere to the status quo of the agreements, and the School District was prohibited from unilaterally altering the terms and conditions of employment. See Util. Workers Union of Am., 35 So.3d at 1025; Sarasota Cnty. Sch. Dist. v. Sarasota Classified/Teachers Ass’n, 614 So.2d 1143, 1147 (Fla. 2d DCA 1993).

. If a dispute between the PEA and the School District were to arise, then the parties could seek a resolution of the impasse pursuant to section 447.403.