PADOVANO, J.
This is an appeal by the Florida State Fire Service Association, IAFF Local S-20, from a final order by the Florida Public Employee Relations Commission dismissing an unfair labor practice charge. The *162 charge was based on a claim that the state had violated the association’s right to collective bargaining by failing to negotiate a condition in the agreement pertaining to retirement benefits. We conclude that the state was required to negotiate the provision at issue and that the Governor’s action in referring the matter to the Florida Legislature without further negotiations with the association amounted to a denial of the right to collective bargaining. Accordingly, we reverse the Commission’s order with directions to sustain the unfair labor practice charge.
The association is the certified bargaining agent for employees within the bargaining unit and has been engaged for the last ten years in collective bargaining with the Governor in his capacity as the employer. The condition of the contract at issue here provides that the employees in the bargaining unit are not required to make financial contributions to the state retirement fund. This provision is contained in Article 16 of the contract, which states, “All bargaining unit members shall continue to participate in the Florida Retirement System (FRS) at no cost to the employee.”
The contract was in effect for a period of three years from July 1, 2009 until June 30, 2012, but it included a provision that would enable the parties to negotiate a change in the article pertaining to wages and to propose changes to a limited number of other articles during the second and third years. On September 10, 2010, a representative of the Department of Management Services wrote to the association to request the submission of proposals to reopen negotiations for the coming fiscal year. The association responded on January 31, 2011, by proposing a request for a wage increase and a competitive pay adjustment. The association did not propose any change to the parties’ agreement as it pertained to the issue of pension benefits.
The Department replied with an email on behalf of the Governor expressing the state’s willingness to consider its requests and also informing the association that the state wished to reopen negotiations on two other matters, a provision relating to the health and welfare of the employees in the bargaining unit and a provision relating to a dues checkoff. At the bottom of the letter, the Department informed the association of the state’s intent to reopen negotiations on yet another matter that had been previously settled by the contract: the subject of retirement contributions. The letter states,
In addition to the above articles, we propose to open Article 16 Retirement, to address retirement as follows:
“The State agrees to administer the Florida Retirement System (FRS) in accordance with any statutory provision, or Act affecting the plan or its operation.”
This email was sent on Friday, February 4, 2011, and it was the first point in the bargaining process for that year in which either party had suggested a possible change in Article 16. The following Monday, the Governor submitted his proposed budget to the Florida Legislature. By operation of law, the submission of the budget creates an impasse in contract negotiations on all matters that have not been resolved by that point.
The Legislature resolved the impasse by passing a General Appropriations Act that required public employees, including association employees, to contribute 3% of their salaries to the Florida Retirement System, beginning on July 1, 2011. The association refused to ratify this change and filed an unfair labor practice charge against the State. It alleged that the manner in which the Governor had effected *163 this change violated the association’s right to collective bargaining over pensions, under sections 447.501(l)(a) and (c), Florida Statutes (2010) and Article 1, section 6 of the Florida Constitution.
The hearing officer assigned by the Commission issued a recommended order concluding that the Governor’s proposed substitute for Article 16 impermissibly deprived the association of any right to future bargaining over the terms of employee pensions. He accepted the association’s argument that, by substituting the proposed language for the extant language of Article 16, the Governor had allowed the Legislature to change the pension plan without any bargaining with the association. Based on this reasoning, the hearing officer concluded, “The state violated section 447.501(l)(a) and (c), Florida Statutes, by obtaining through impasse resolution a waiver of future bargaining over pensions (Article 16) at the conclusion of the re-opener bargaining.” As a remedy, he recommended that “[t]he state should compensate the association for its necessary attorney’s fees and litigation costs for that portion of its original charge on which it prevailed.”
On December 10, 2012, the Commission issued a final order rejecting the hearing officer’s ultimate conclusion that the State had violated the law, as well as his recommendation that the State be ordered to pay the association’s attorney fees. It ruled instead that the substituted pension language could not be construed as a waiver of the right to bargain, nor could it operate as such. The Commission found that a plain reading of the language does not provide a basis for the State to refuse to bargain, either now or in the future, over the subject of pensions. The association then appealed the Commission’s order to this court.
Whether the Governor effectively circumvented the collective bargaining process by opening a provision of the contract to a potential change by . the Legislature without first negotiating that issue with the association is an issue of law. It is the kind of legal issue that turns on the plain meaning of the applicable statutes. Accordingly, we review the decision in this case by the de novo standard. See Fla. Pub. Emps. Council 79, AFSCME, AFL-CIO v. State, 921 So.2d 676, 681 (Fla. 1st DCA 2006); Miami-Dade County v. Government Supervisors Ass’n of Florida, OPEIU AFL-CIO, Local 100, 907 So.2d 591, 593-94 (Fla. 3d DCA 2005); Colbert v. Dep’t of Health, 890 So.2d 1165, 1166 (Fla. 1st DCA 2004); § 120.68(7)(d) Fla. Stat. (2010).
The right to collective bargaining is a fundamental right guaranteed by the Florida Constitution. As stated in Article I, section 6, “The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged.” This section prohibits not only an explicit denial of the right to collective bargaining, but also an action by a public employer that results in a denial of the right. As the court explained in Hillsbor-ough County Governmental Employees Assoc., Inc. v. Hillsborough County Aviation Authority, 522 So.2d 358, 363 (Fla. 1988), the constitution guarantees public employees the right of “effective” collective bargaining.
The constitutional right created by Article I, section 6 is implemented in Chapter 447, Florida Statutes. Section 447.501(1) provides in pertinent part:
(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
*164 (c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit.
§ 447.501(l)(a) and (c), Fla. Stat. (2010). The Legislature further defined the duty to engage in collective bargaining in section 447.309(1), Florida Statutes (2010). This section requires the public employer and certified bargaining agent to bargain jointly and collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit.
The right of public employees to collective bargaining includes a right to bargain on the subject of retirement benefits. This is said to be a mandatory subject of the bargaining process. See Scott v. Williams, 107 So.3d 379, 389 (Fla.2013) (stating that “retirement pensions and benefits are mandatory subjects of public collective bargaining”). Consequently, the right to bargain for retirement benefits may not be denied by the state. The Legislature may not remove the subject of pensions from the bargaining process, nor may the State reserve to the Legislature the exclusive authority to determine retirement benefits for public employees. See City of Tallahassee v. PERC, 393 So.2d 1147 (Fla. 1st DCA), affd, 410 So.2d 487 (Fla.1981).
It is axiomatic that a public employer may not violate a union’s right to collectively bargain on behalf of the employees by unilaterally imposing terms and conditions of employment. See Palm Beach Junior Coll. Bd. of Tr. v. United Faculty of Palm Beach Junior Coll, 475 So.2d 1221, 1224 (Fla.1985); Hillsborough County Governmental Employees Assoc., Inc. v. Hillsborough County Aviation Authority, 522 So.2d 358 (Fla.1988). The parties, the hearing officer and the Commission referred to a violation such as this as a “waiver” of the union’s rights. In this context, they are using the term “waiver” not in its ordinary sense to mean a voluntary relinquishment of a known right, but rather to mean a unilateral deprivation of the right to negotiate a term of the contract.
The Commission concluded that the state had not committed an unfair labor practice by the manner in which it resolved the impasse, because the Governor’s proposal did not constitute a “clear and unmistakable waiver” of the association’s rights. On this point, the Commission appears to have reversed the standard that should be applied in resolving an issue such as this. The question is not whether there was clear evidence to show that the employer had imposed a contract condition involuntarily, but whether there was clear evidence to show that the association gave up the right to argue about the condition. The absence of clear and unmistakable evidence of a waiver works in favor of the association, not the employer.
Courts that have applied the “clear and unmistakable waiver” rule uniformly use the term “waiver” in its true sense to mean that a party has given up a right. For example, in School Distnct of Polk County v. Polk Education Association, 100 So.3d 11 (Fla. 2d DCA 2011), the court stated the rule as follows:
Absent a clear and unmistakable waiver by the certified bargaining representative, exigent circumstances requiring immediate action, or legislative action imposed as a result of impasse, a public employer’s unilateral alteration of wages, hours or other terms and conditions of employment of employees represented by a certified bargaining agent *165 constitutes a per se violation of [s]ection 447.501(a)(a) and (c).
[[Image here]]
[F]or inaction to ripen into a “clear and unmistakable waiver,” consideration of all the circumstances must reveal that the [bargaining agent’s] conduct is such that the only reasonable inference is that it has abandoned it right to negotiate over the noticed change.
Polk Education, 100 So.3d at 15 (quotations omitted).
Likewise, in Florida School for the Deaf and Blind v. Florida School for the Deaf and Blind, Teachers United, FTP-NEA, 483 So.2d 58, 59 (Fla. 1st DCA 1986), this court held that “absent a clear an unmistakable waiver by the certified bargaining representative, a public employer’s unilateral alteration of wages, hours or other terms and conditions of employment ... constitutes a per se violation” of the right to collective bargaining (emphasis added); see also Leon County Police Benevolent Ass’n v. City of Tallahassee, 8 FPER ¶ 13400 (1982), affd, City of Tallahassee v. Leon County Police Benevolent Ass’n, Inc., 445 So.2d 604 (Fla. 1st DCA 1984). The rule established in all of these cases is that it must be clear and unmistakable that the bargaining agent intended to give up a term or condition.[1] Yet the Commission has applied the rule to mean that there must be clear and unmistakable evidence that the employer intended to make a unilateral change in the contract.
The Commission concluded that the state had not committed an unfair labor practice, because there was nothing in the Governor’s proposal that would give him a right to unilaterally change the terms and conditions of employment relating to pensions. This argument focuses on the language of the proposal and fails to take into account its effect. As the supreme court explained in United Teachers of Dade, FEA/United AFT, Local 197k, AFL-CIO v. Dade County School Board, 500 So.2d 508, 511 (Fla.1986), the court must look beyond the language of a proposal and consider its impact and effect in deciding whether it amounts to a unilateral condition of the contract.
In United Teachers, the lower court had held that a program mandated by the Legislature did not violate the right of collective bargaining because the Legislature was not a party to the employment contract. While affirming the lower court’s ultimate conclusion, the supreme court rejected the lower court’s reasoning that the Legislature was a “stranger to the employment relationship.” The supreme court found that this narrow focus was an “exercise in semantics” that “ignores the real impact or practical effect legislation may have on the rights guaranteed by article I, section 6.” The court emphasized that a correct analysis must “focus on the impact such decisions have on public employees’ constitutionally guaranteed collective bargaining rights.” Id. at 511; see also City of Tallahassee v. PERC, 410 So.2d at 489.
Applying these principles, we conclude that the actions by the Governor amount to a violation of the association’s right to collective bargaining. The Governor proposed to replace the rights established in Article 16 with an open-ended provision *166 that would enable the state to administer the retirement system “in accordance with any statutory provision” that might be enacted into law. It is true that the proposal did not itself change the existing provision in Article 16; however, it did effectively open the subject of retirement benefits to a potential change by a third party, in this case the Florida Legislature. The practical effect of the Governor’s action in delegating the issue of pension benefits to the Legislature was to make it impossible for the association to negotiate the issue at all. Thus, we conclude that the action is one that amounts to a denial of the association’s right to collective bargaining.
One might argue that the association should have objected to the Governor’s proposal to leave the matter up to the Legislature, but the timing of the proposal would have made this difficult, if not impossible. The Governor made his proposal on a Friday and submitted his budget the following Monday. By operation of law, the submission of the budget results in an impasse in the negotiations. See §§ 447.403(5)(a) and 216.163(6), Fla. Stat. (2010). The sequence of events left the association with little else to do but make its case to the Legislature. That, of course, does not satisfy the Governor’s obligation to engage in collective bargaining.
The Governor’s proposal appears to be passive, in the sense that it left the issue of pension benefits up to the Legislature. However, the budget the Governor submitted to the Legislature included a provision that would require all state employees to contribute a portion of their pay to the retirement fund. Thus, while it is correct to say that the Governor did not directly remove the existing provision regarding the pension benefits in his dealings with the association, that was precisely the result he was advocating in the Legislature. The net effect of the proposal was to shift the issue of pension benefits from the process of negotiating a contract to the process of enacting legislation.
Our conclusion that the last-minute proposal amounted to a denial of the right to collective bargaining is supported not only by a practical assessment of the facts, but also by the applicable statutes. Section 447.309(1), Florida Statutes states that the “bargaining agent for the organization and the chief executive officer of the appropriate public employer or employers, jointly, shall bargain collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit.” This statute plainly requires that the bargaining be done by the “chief executive officer of the public employer,” in this case the Governor, and not by a third party to whom the process has been delegated. Here, the Governor’s proposal granted a third party a unilateral right to impose a new condition in the agreement, and, in that respect, it was contrary to the requirements of section 447.309(1).
For these reasons, we conclude that the Commission erred in rejecting the hearing officer’s conclusion that the state had violated the association’s right to collective bargaining. The association sought several remedies in its unfair labor practice charge, but, in the present posture of the case, the only one that can be enforced is an award of costs and attorney fees. Accordingly, we reverse the final order by the Commission and direct that it enter a final order accepting the recommended order by the hearing officer and awarding costs and fees to the association.
Reversed.
BENTON, J., and SENTERFITT, ELIZABETH, Associate Judge, concur.

. Federal courts apply the “clear and unmistakable waiver” rule in the same way to mean that there must be evidence that the union clearly and unmistakably relinquished its right to bargain over the mandatory subject at issue. See, e.g., Bath Marine Draftsmen's Association v. National Labor Relations Board, 475 F.3d 14, 22 (1st Cir.2007); Local Union 36, International Brotherhood of Electrical Workers, AFL-CIO v. National Labor Relations Board, 706 F.3d 73, 82-84 (2d Cir.2013).