786 So.2d 613 (2001)
Joseph MARTINOLICH, et al., Appellants,
v.
GOLDEN LEAF MANAGEMENT, INC., et al., Appellees.
No. 3D00-1425.
District Court of Appeal of Florida, Third District.
April 25, 2001.
Rehearing and Certification Denied June 20, 2001.
*614 Lorenzo & Capua, Miami; and Pearson & Mayer, and Dorothy F. Easley, Coral Gables, for appellants.
John A. Jabro; Reno & Cassel, and Natileene W. Cassel, Tavernier; and Christine M. Ng, Key Largo, for appellees.
Before JORGENSON, COPE, and RAMIREZ, JJ.
PER CURIAM.
Joseph Martinolich, plaintiff below, appeals a directed verdict in favor of defendant Golden Leaf Management, Inc. Because the issue should have been decided by the jury, we reverse the directed verdict, but affirm the exclusion of evidence relating to the OSHA investigation, the issue before us on cross-appeal.
Martinolich brought suit for wrongful discharge against both Plantation Key Convalescent Center ("the nursing home") and Golden Leaf Management ("the management company") as joint employers. At the close of Martinolich's case in chief, the management company moved for a directed verdict on the issue of whether it was Martinolich's joint employer. The motion was granted and the management company was dismissed as a defendant. The jury subsequently found that the nursing home had wrongfully discharged Martinolich in retaliation for exercising his rights under Florida Worker's Compensation Law, section 440.25, Florida Statutes, (1995), and also in violation of Florida's Whistle Blower Act, section 448.102, Florida Statutes, (1995).
A trial court may direct a verdict only when the evidence and all reasonable inferences fail to prove a plaintiffs case. See Hartnett v. Fowler, 94 So.2d 724, 725 (Fla.1957). "In determining a motion for directed verdict, the evidence, and all reasonable inferences, therefrom, must be viewed in a light most favorable to the *615 non-moving party." Woods v. Winn Dixie Stores, Inc., 621 So.2d 710, 711 (Fla. 3d DCA 1993). "Where evidence is conflicting, or will admit of different reasonable inferences, the issue should be submitted to the jury as a question of fact, and not passed upon by the judge as a matter of law." Levey v. Getelman, 444 So.2d 1027, 1028 (Fla. 3d DCA 1984).
Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones. See United Teachers of Dade v. Dade County School Bd., 500 So.2d 508, 512 (Fla.1986); see also Chase v. Walgreen Co., 750 So.2d 93, 96 (Fla. 5th DCA 1999); Brand v. Florida Power Corp., 633 So.2d 504, 507 (Fla. 1st DCA 1994).
Federal courts have developed several tests for determining when separate, but related entities should be aggregated for purposes of employment and labor statutes. As explained by the Eleventh Circuit in the context of Title VII:
We accord a liberal construction to the term "employer" under Title VII. In keeping with this liberal construction, we sometimes look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's "employer" comes within the coverage of Title VII.
We have identified three circumstances in which it is appropriate to aggregate multiple entities for the purposes of counting employees. First, where two ostensibly separate entities are "`highly integrated with respect to ownership and operations,'" we may count them together under Title VII. This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them. This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees. This is the "agency" test.
Lyes v. City of Riviera Beach, 166 F.3d 1332, 1341 (11th Cir.1999). (citations omitted).
In the present case, the nursing home has contracted with the management company for personnel and management services. The nursing home and the management company are separate corporations, but are owned by the same individual and have the same president.
There is a Management and Consulting Agreement between the nursing home and the management company. In providing management services, the management company acts as the agent of the nursing home. The management company recruits and evaluates the nursing home administrator. It establishes personnel policies, wage structures, and staff schedules with the consent of the nursing home. It establishes schedules of recommended charges, bookkeeping and accounting procedures, and prepares the proposed annual budget, all with the consent of the nursing home. The agreement was signed by Robert J. Becht as president of the nursing home and by Becht as president of the management company.
In 1996, after consulting with the personnel officer at the management company, the nursing home administrator fired Martinolich. The personnel officer concurred in the firing decision.
*616 Under the analysis of the federal authority cited above, there existed a jury issue over whether the management company should be treated as Martinolich's employer, along with the nursing home.
The management company points out that both the nursing home and the management company are duly organized Florida corporations, each of which is carrying on a viable business. It correctly points out that the corporate entity is to be respected, see Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla.1984), and that Martinolich made no attempt to pierce the corporate veil.
As we see it, this is not a matter of disregarding the corporate entity. The underlying question is whether, for purposes of remedial employment legislation, Martinolich is properly viewed as being employed by more than one entity. Here, the nursing home has contracted with the management company for performance of the nursing home's personnel and administrative functions, and the management company participated in the discharge decision. It is thus appropriate to apply the tests developed in the federal cases, and doing so also advances the remedial purposes of the statutes now before us.
Finally, we find no abuse of discretion in the trial court's ruling excluding the results of the OSHA investigation regarding the complaint filed by Martinolich for which he was wrongfully discharged.
Reversed in part, affirmed in part, and remanded.