PER CURIAM.
Appellants, Leonte Martinez and his wife, Sandra (“Martinez”), plaintiffs below, appeal from the trial court’s order granting Poly-Ply Corporation’s (“Poly-Ply”), defendant below, motion for new trial, which came after a jury verdict in Martinez’s favor. Martinez also appeals the denial of his motion for directed verdict on the issue of comparative negligence. For the following reason, we reverse the order granting a new trial and affirm the order denying the motion for a directed verdict.
The appellants filed a personal injury action against Poly-Ply for injuries sustained as a result of Leonte Martinez being struck in the knee by a metal loading ramp. He had been employed as a truck driver and was injured while picking up a delivery from Poly-Ply’s facility. He claims that Poly-Ply’s employee negligently operated a forklift in such a manner that a metal ramp was inadvertently removed and struck his left knee causing him permanent injury. Poly-Ply answered the complaint and raised Martinez’s comparative negligence as an affirmative defense.
Prior to trial, Martinez filed various motions in limine seeking to exclude any reference to his prior injuries, accidents, workers compensation claims and/or alleged drug use. In addition, Martinez moved to have a bifurcated trial on the issues of liability and damages. The court, without initial objection, granted Martinez’s motion for the bifurcation of the trial.[1] Thereafter, by agreed motion, the trial court ordered that:
[liability will be tried first. A second jury will decide the damages issue, if necessary, on the court’s calendar in approximately three months following the liability trial.
In addition, the court ruled on the majority of Martinez’s motions in limine during the trial, and ultimately granted Poly-Ply permission to question and/or impeach Martinez about five separate incidents of past injuries.
During the trial on the issue of liability, Martinez presented two witnesses, both of whom were Poly-Ply employees. Both testified that forklifts are regularly used on their job to load and unload large rolls of plastic. One of these witnesses testified that Poly-Ply had no designated safety area where outside drivers, such as Martinez, were directed to stand while waiting for their trucks to be loaded. The other employee, a supervisor, testified that Poly-Ply did indeed have such an area and that it was Poly-Ply’s standard practice to instruct drivers to wait in that designated area. This witness acknowledged, however, that he didn’t know whether Martinez knew about or was instructed to stand in, the designated safety area. The supervisor further acknowledged that if the Poly-Ply forklift operator had injured Martinez while attempting to remove a “stuck” ramp with a forklift, the operator would have been at fault. Martinez rested r>his case without taking the stand.
Poly-Ply indicated that it would call Martinez as a witness in its own case in *329 chief, but asked for a recess until the following morning. The next day, instead of calling Martinez, Poly-Ply moved for a directed verdict claiming that Martinez’s failure to take the stand had defeated his claim. The trial court denied the motion but apparently hinted that it might grant the motion if Martinez didn’t take the stand. The following colloquy between the court and Martinez’s counsel then transpired:
The Court: I think I have made it clear that I look forward to listening to the plaintiff in this cause.
Plaintiffs Counsel: The defense says they are not going to call the plaintiff, Judge.
The Court: I just said something to you. That’s all I said.
Thereafter, in its case in chief, Poly-Ply read portions of a deposition, and rested without calling and/or impeaching Martinez.
Martinez then moved for a directed verdict on both liability and comparative negligence. These motions were denied. The jury returned a verdict of liability against Poly-Ply finding it fifty-six percent (56%) responsible for Martinez’s injuries, and Martinez forty-four percent (44%) comparatively negligent.
Poly-Ply moved for a new trial on the grounds that: the verdict was contrary to the evidence and law; the court erred in failing to grant a direct verdict in Poly-Ply’s favor; the court erred in granting the motion in limine regarding the areas in which Poly-Ply could impeach Martinez; and the bifurcation of this case was error. The court granted the motion for new trial based upon its conclusion that it had:
erred in granting Plaintiffs Motion to Bifurcate the Trial of this cause and that the bifurcation prejudiced the Defendant’s ability to obtain a fair trial by unfairly limiting Defendant’s ability to effectively cross-examine and impeach the Plaintiff, Leonte Martinez.
Martinez appeals and argues that the trial court abused its discretion in ordering a new trial based upon unpreserved error. Essentially, Martinez asserts that where Poly-Ply had the opportunity to call Martinez to the stand as an adverse witness and impeach him, but elected no to do so, it cannot now complain that it was unduly prejudiced. We agree and reverse.
The court here found that Poly-Ply was unduly prejudiced from fully impeaching Martinez by its previous orders. The court’s previous rulings, however, had specifically permitted Poly-Ply to question Martinez on five (5) different “questionable” incidents of previous injury, yet Poly-Ply chose not to call Martinez as an adverse witness. Poly-Ply, therefore, waived this issue when it made the tactical decision to not call Martinez as a witness.[2] The order for new trial was accordingly based on unpreserved error, and cannot stand. See KMart Corp. v. Hayes, 707 So.2d 957, 958 (Fla. 3d DCA 1998) (“That [a party’s] strategy backfired neither requires nor permits the court to allow [it] a new trial.”). See also Celentano v. Banker, 728 So.2d 244, 245 (Fla. 4th DCA 1998) (holding that trial court lacked jurisdiction to grant new trial on grounds that were not preserved for review or fundamental error.).
Martinez also appeals the denial of his motion for directed verdict. On this issue, we affirm. A trial court may direct a verdict only when the evidence and all reasonable inferences preclude a verdict for the nonmoving party. See Martinolich *330 v. Golden Leaf Mgmt., Inc., 786 So.2d 613, 614 (Fla. 3d DCA 2001) (“In determining a motion for directed verdict, the evidence, and all reasonable inferences [sic] therefrom, must be viewed in a light most favorable to the non-moving party.” (quoting Woods v. Winn Dixie Stores, Inc., 621 So.2d 710, 711 (Fla. 3d DCA 1993))), rev. denied, 814 So.2d 439 (Fla.2002). See also Scott v. TPI Restaurants, Inc., 798 So.2d 907, 908 (Fla. 5th DCA 2001) (“A motion for directed verdict should be granted when there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party.”) (quoting St. Johns River Water Mgmt. Dist. v. Femberg Geological Servs., 784 So.2d 500, 504 (Fla. 5th DCA 2001)). Here, based upon the evidence presented, we conclude that the question of whether there was an area of safety for drivers such as Martinez to stand while waiting for their trucks to be loaded was one for the jury. From the evidence, a jury could reasonably infer or conclude that there was indeed an area for drivers to sit or stand while their trucks were being loaded. Viewed in the light most favorable to Poly-Ply, the non-moving party, there was sufficient evidence for a jury to conclude that Martinez was comparatively negligent.
Accordingly, we reverse the order granting a new trial, affirm the denial of Martinez’s motion for directed verdict, and remand for the trial court to reinstate the jury verdict and to proceed with the trial on the issue of damages.
Affirmed in part, reversed in part and remanded.

. In a subsequent motion for rehearing, Poly-Ply sought to withdraw its agreement to the bifurcation of the trial and object to the same, but the trial court denied the motion.

. Apparently, this decision was based upon Poly-Ply's belief that its motion for directed verdict would be granted if Martinez did not testify at all in this case.